THEODORE RIPLEY versus WILLIAM D. CROOKER & als.

In a contract between A, "of the one part," and B, C and D, "of the other part," in which A agrees to build a vessel of certain dimensions, and B, C and D to pay certain sums at stipulated times for eleven-sixteenths of the vessel, the liability of the parties of the second part is joint, and not several.

Words set against the signatures of B, C and D, indicating the proportional share of each in the vessel, will not affect their joint liability, nor vary the construction of the contract.

Proof of a custom in the vicinity for persons building a vessel together, each to be responsible for his own share only, is inadmissible to modify a written contract.

Payments made by one of the part owners towards his share, and receipted for as such by the builder, the receipts not being under seal, will not sever the indebtedness, nor affect their joint liability for a balance unpaid.

The rule that one part owner of a vessel aggrieved by another must resort to a bill in equity for redress, applies only to cases relating to her earnings or disbursements, where no settlement has been made or account stated between them.

An action at law may be brought by one party to a contract for the building of a vessel, against another party to it, for a breach thereof, although the plaintiff and defendant are to be part owners or tenants in common.

ON AN AGREED STATEMENT OF FACTS.

ASSUMPSIT on an account annexed, and for a balance alleged to be due jointly from the defendants to the plaintiff, for building five-eighths of the ship Adrianna in 1854–5, under the following contract : —

"Memorandum of agreement made and concluded upon by Theodore Ripley, of Hallowell, Maine, on the one part, and William D. Crooker, Samuel Swanton, 2d, and David Crooker and Isaac Preble, all of Bath, on the other, to wit : —

"The said Ripley agrees to build and complete a good ship of about eleven hundred tons, to be built at Hallowell, and to be commenced the next week and completed ready for sea as soon as possible, to be rigged at Bath; and it is binding on him to be particular to charge all the bills, which he pledges to do in good faith, to arrive at her cost; and for his services is to receive one dollar each register tonnage, with two

hundred dollars for use of yard, steambox, and yard tools and shores, &c., and is to receive five thousand per month on eleven-sixteenths, commencing payment the first day of July next, and so on monthly, not to exceed five payments, and when completed the balance to be paid in five and ten months, reckoning interest on rigging bill, iron bill, and Kendall, Richardson & Co.'s bill, should these bills become due previous to the five and ten months payments, no interest to be calculated otherwise but at the bills. And the second parties agree to pay the said Ripley five thousand dollars per month, commencing the first of July, and so on monthly, not to exceed five payments, to the ship's completion ready for sea, when her cost by the bills is to be estimated, and the materials to be bought at the best advantage for cash, save the iron bill, and rigging, and Kendall, Richardson & Co.'s bills, which, if they become due previous to five and ten months after her completion, the interest on said bills are to be added to the balance to be paid in notes at five and ten months—all other interest not to be reckoned.

" Recapitulation :— Payments, five thousand dollars per month to her completion ready for sea, say $25,000, and the balance in notes at five and ten months; not to be more than five payments in cash monthly.

| " Three-eighths, | William D. Crooker. |
| " One-eighth, | Samuel Swanton, 2d. |
| " One-eighth, | David Crooker. |
| " One-sixteenth, | Isaac Preble. |
| | Theodore Ripley. |

" Witness to all the signatures :— Howard P. Wiggin.

" Bath, May 31, 1854."

The plaintiff introduced his own deposition, testifying, amongst other things, that 'he commenced building the Adrianna immediately after the contract was executed, and completed her on or before March 20, 1855. The whole cost was $70,795,93, a fraction over $65,43 per ton, government measurement. He made up an account of the cost, and exhibited it to the defendants, and they approved it, but said

they were short of funds, and would pay as soon as they could. When the ship was about finished, the owners all came on board at Bath, and witness delivered her to them, and they accepted her. At first, the defendants made their payments according to the contract, but afterwards failed to do so. The witness proceeded to state the amount paid on each of the shares of the defendants, and the amount due on each. Witness further stated that he was put to great inconvenience by the defendants not paying according to the contract.

The defendants introduced the deposition of Samuel Swanton, 2d, who testified, amongst other things, that he agreed to build one-eighth of the ship Adrianna; that Ripley called upon him from time to time to make payments on account of one eighth, and gave him receipts for the payments made; and that Ripley never claimed of him pay for any more than one-eighth. He further testified, that, so far as he knew, it was a custom on the Kennebec river, for each part owner of a vessel to build his part; that he did not know of any other custom; that it was the understanding when this ship was built; that it was talked over when the contract was made, and each one was to pay his own bills, and no one have any thing to do with any part except his own; and that the ship was not built according to the terms of the contract as to seaworthiness.

They also introduced the deposition of David Crooker, whose testimony was similar to that of Swanton with regard to the understanding, the payments made, the receipts given, and the custom on the river in building vessels where there are several owners.

The defendants further introduced six receipts given by Ripley to Swanton, D. Crooker and W. D. Crooker for their respective payments, the payments made by Swanton and by D. Crooker being described as " on account of his one eighth," and those by W. D. Crooker " on account of his three-eighths," of the ship which Ripley was building.

It was agreed, that, if the Court was of opinion that the action could be maintained in its present form, the defend-

ants should be defaulted, and an auditor appointed to ascertain and report the damages; but, if not, a nonsuit was to be entered.

*A. G. Stinchfield,* for the plaintiff, argued that the contract between Ripley and the defendants was either joint and several, or joint, and that each of the defendants was liable for the full amount due. In joint contracts, as well as joint and several, each one of the parties is liable for the undertaking of all, and execution obtained in an action against all may be satisfied from the property of either. *Ward* v. *John-son,* 13 Mass., 148; *Robertson* v. *Smith,* 18 Johns., 477; 1 Johns., 319. To separate the responsibility, and apportion the liability of the parties, distinct words must be used to that effect. *French* v. *Price,* 24 Pick., 13; 7 Maine, 171.

In the case at bar, the contract provides for entire payments of $5000, per month, and not for proportional payments by each party.

If the undertakings of the defendants were separate, one or more of them might fail to pay, and the contractor be obliged to build the ship for the rest at a heavy loss. Is it to be supposed that he was to finish the vessel in eighths or sixteenths? Could he say to a party, I will finish your sixteenth, but must leave the balance unfinished?

The contract warrants the construction given, and cannot be enlarged or varied by parol testimony. 2 Kent's Com., 757, 9th ed. If ambiguous, the language is to be construed most strictly against the parties using it. Bacon's Maxims, No. 3; 2 Kent, 758; *Carlton* v. *Tyler,* 16 Maine, 392; *Agricultural Bank* v. *Burr,* 24 Maine, 265.

In answer, it is alleged that the numbers set against the defendants' signatures limit their liability. But the limitation is, at most, but an implied one, and not such an explicit statement in the body of the contract as should affect other parties than themselves.

As to the hardship of the case, it is more equitable that the joint owners should suffer for each other's default, than to throw the whole burden upon the builder.

The defendants having accepted the ship, it is now too late to allege unseaworthiness. If the plaintiff did not build it according to the contract, the defendants had the option to rescind the contract, or to accept the performance with its defects. Having chosen the latter course, they are liable for the full amount stipulated to be paid. *Everett* v. *Gray*, 1 Mass., 101. The contract must be rescinded in reasonable time, if at all. 26 Maine, 350. Only a party guilty of no default or violation is entitled to rescind a contract. Story on Contracts, 1080, 3d ed.

If the defendants have any claim for reduction, it must be sought in a special action of the case.

It is said that the plaintiff, being a joint owner, should have brought a bill in equity. It is true that joint owners cannot ordinarily sue each other, except on liquidated demands; but they may waive their ordinary relations, and bind themselves by special agreement, and, on special promises, may sue each other. Abbott on Shipping, 780. The present suit is on a special written contract.

The contract is to explain itself. The acceptance of proportional payments from the several defendants did not limit their liability, if the plaintiff did not agree so to accept them as to discharge each from further liability as his share was paid. The testimony does not show such an acceptation. Ripley accepted payments as the several owners made them. It was not for him to say how they should pay, if the payments were actually made.

A contract cannot be varied even by the acts of the parties themselves. Once joint, it is always so, unless changed by an instrument as formal as itself, executed by all the parties. The words annexed to the signatures are no part of the contract, but simply a memorandum made by the signers for their own benefit.

The contract contains in itself all that is necessary to make it certain and unambiguous.

If inadmissible evidence has been received, the Court, in a case submitted, may reject it, and regard only such as is

legally admissible. The rules, as to the admission or exclusion of evidence, apply only to jury trials, where inexperience may be misled by testimony illegally received.

*F. D. Sewall,* for David Crooker.

The contract is not joint, but several. If joint on its face, by the contemporaneous acts of the parties to it, it was severed, as appears by Ripley's deposition, and the receipts put into the case. It was entered into and performed with reference to a well established custom on the river with regard to the building of vessels by part owners.

The writing is loosely drawn, but taken in connection with the proportions prefixed to the signatures, it shows the separate liability of the defendants. From the body of the instrument, the rights and obligations of the parties to it cannot be determined. Apparently it provides for building the whole ship for the defendants; but this is not claimed by the plaintiff. The proportions are not stated in the instrument, but are explained by the signatures with the proportions prefixed, which alone show the true relation of the parties.

This is at most a simple contract, and to be construed according to the intent of the parties. Chitty on Contracts, 75, 84; Com. Dig., Title, Agreement; *Littlefield* v. *Winslow,* 19 Maine, 394; 2 Parsons on Contracts, 14.

The undertaking of the parties of the second part to pay $5000, per month, is apparently joint, but is explained and modified by the shares prefixed to the signatures. The whole is equivalent to an arrangement to pay so much in the proportions set against their names.

The plaintiff in his deposition admits, in substance, that he kept separate accounts with the part owners, and his statement of the balance due on each share shows that he did not consider them jointly liable for the whole unpaid balance. The receipts in the case confirm the same view.

If the contract was originally joint, the parties have severed it by treating it uniformly as several, thereby discharg-

ing the joint liability.    *Holland* v. *Weld*, 4 Maine, 255 ;  *Baker*
v. *Jewell*, 6 Mass. 460.

The contract being ambiguous and obscure, may be ex-
plained by the testimony as to how it was treated by the
parties, and as to the custom on the river of each part owner
being liable solely for his share.    *Macy* v. *Insurance Co.*, 9
Met., 363.

The plaintiff has mistaken his remedy, which is equity,
and not law.    The parties are all part owners, and can main-
tain no action against each other, unless for liquidated dam-
ages.    3 Kent's Com., 213 ;  *Dodge* v. *Hooper*, 35 Maine,
536 ;  *Maguire* v. *Pingree*, 30 Maine, 508 ;  *Hardy* v. *Sproule*,
33 Maine, 508.

The action is no more based on a special promise, than if
one of the part owners was sailing the vessel under an au-
thority from the others.    The aggrieved party must resort to
a suit in equity.

*Tallman & Larrabee*, for W. D. Crooker, argued that the
manner in which a contract is executed must be considered,
in giving construction to its provisions, and that the action
of the several parties under the contract explains the inten-
tions they had in its inception.

The opinion of the Court was drawn up by

MAY, J. — The contract set forth in the writ, is of two
parts.    In its direct terms, it is between the plaintiff " on the
one part," and the defendants " on the other."    Its language
is too unequivocal in its meaning to admit of any other con-
struction than that of a joint undertaking, on the part of
the defendants, to pay for the eleven-sixteenths of the ship
built for them, at her cost, in the manner and at the times
stipulated in the contract.    The contract contains no words
fairly indicative of a several liability by each of the defendants
for particular parts of the ship ;  but, on the contrary, the de-
fendants together agree to pay the entire price which was
to be paid, for that portion of the ship which they together

agreed to take, and which the plaintiff agreed to build for them.

The fact, that words indicative of the proportional part of the ship which each defendant was to take were set against the name of each, does not change the construction of the contract, nor in any way affect the joint liability of the defendants. Such words do not sufficiently show an intention to limit the liability of each defendant to his proportion of the ship, and cannot, therefore, control the general language used in the contract, so far as the plaintiff is concerned. They may, however, like the word surety or sureties appended to some of the signatures upon a note, serve to show the relations subsisting between the parties of the second part of the contract; but they cannot be permitted to subvert, or even modify the unambiguous terms of the contract, as made by the parties themselves.

It is contended, in defence, that the terms of the contract are modified by the proof in the case, tending to show the existence of a custom on the Kennebec river for persons engaged in the building of vessels each to be responsible only for his own share. In the case before us, the contract is in writing, and there is no proof that any of its words are by usage or custom understood to be used in any other than their ordinary sense. The custom which is attempted to be proved does not reach this case. To allow such a custom to modify the written contract of the parties would be to set it up against their express agreement and manifest intentions, which the law will not permit. See *Metcalf* v. *Weld & al.*, just decided in Massachusetts, and reported in the Law Reporter, vol. 23, No. 9, p. 561.

Again, it is said that both the plaintiff and the defendants have always treated this contract as several and not joint; and it fully appears from the evidence that payments have been made by the defendants severally, and receipts given by the plaintiff therefor, which clearly indicate that such payments were made by each defendant towards his particular share of the ship, and were so received. If the contract was doubtful

in its construction, such facts might well aid the Court in determining the intention of the parties in making it; but, in a case like this, where there is no ambiguity in its terms, it is not perceived how the subsequent conduct of the parties can change the plain meaning of the contract, or take away the appropriate remedy thereon, unless such conduct amounts to a severance of the joint liability, or consists of acts which may fairly operate as a release from such liability. But, where several persons are jointly indebted, and one of them pays his specific share of the debt, and it is received and receipted for by the creditor as such, such payment will not exonerate the party paying from his liability for the residue of the debt. Such receipt, not being under seal, is neither a severance of the indebtedness, nor an effectual release; and, notwithstanding such receipt, the parties to the contract will remain jointly bound, to the extent of what is unpaid, in the same manner as if no such specific payment had been made. *McAllister & al.* v. *Sprague & al.*, 34 Maine, 296.

It is further urged that, notwithstanding the contract may be joint, the only remedy upon it is by a bill in equity. We do not so understand the law. The fact that the contract relates to the building of a ship, of which the plaintiff and defendants are to be tenants in common, does not deprive the plaintiff of his remedy by an action at law for such breaches thereof as may be proved to exist. The rule that equity must be resorted to by part owners of a vessel for the adjustment of the affairs between them, applies to cases relating to *her earnings and disbursements*, when no settlement has been made or account stated between them; but does not apply to cases of contract growing out of the original construction of the vessel, notwithstanding the builder is a part owner, any more than to promissory notes given by the purchaser to such builder for a specific portion of the vessel. Such contracts do not relate to the use and management of the vessel, and therefore are not within the reason of the rule which requires a party to proceed in equity. In such cases, an action at law is the appropriate remedy. Such action may also be maintained between part-

ners in similar cases.   Parsons' Mercantile Law, p. 182, note 2, and p. 183, note 1.

The result is, that the defendants are to be defaulted, and, by the agreement of the parties, an auditor is to be appointed to assess the damages.            *Defendants defaulted.*

TENNEY, C. J., and RICE, CUTTING, GOODENOW, and DAVIS, JJ., concurred.