The Cedar Rapids & Mo. River R. R. Co. v. Boone County.

THE CEDAR RAPIDS & MO. RIVER R. R. CO. v. BOONE COUNTY.

| | |
|---|---|
| 34 | 45 |
| 93 | 445 |
| 34 | 45 |
| 115 | 39 |

1. Board of supervisors: COUNTY: SWAMP LANDS: SPECIAL ELECTION. It is competent for the board of supervisors, under section 986 *et sequor* of the Revision, to call a special election for the purpose of submitting to the voters of the county the question of the ratification of a contract between the county and a railroad company, under which the swamp lands of the county are to be conveyed to the company to aid in the construction of its road.

2. —— SUBMISSION TO VOTERS. It cannot be successfully urged against the validity of such contract that the question of its ratification was not submitted to *all* the voters of the county, because at the time of the submission a portion thereof, to whom no submission was made, were engaged in the military service of the United States.

3. Evidence: PAROL AGREEMENT. Evidence of a contemporaneous parol agreement is not admissible to vary the terms of a written contract.

*Appeal from Greene District Court.*

THURSDAY, MARCH 28.

THE petition alleges that on the 3d day of June, 1863, a contract in writing was made and entered into between the county of Boone and the plaintiff, the material portion of which is as follows:

" The county of Boone, in the State of Iowa,   *   *   * for the purpose of making, or aiding in making, the Cedar Rapids and Missouri River railroad through said county of Boone, has this day bargained and sold, and by these presents does bargain and sell, to the said party of the second part, all and singular the interest, rights, privileges and powers which the said county of Boone had or may hereafter acquire in and to the swamp lands, and funds which may be received from the sale of lands, or as indemnity for lands heretofore sold by the general government, under the several acts of congress, and of the State of Iowa, in relation to such lands, so far as the same pertain to or are applicable to such swamp lands and swamp land funds in said county of Boone ; hereby intending to place fully at the disposal of the said party of the second part, all of the said lands, or money, or script, or notes, or other obligations received in lieu of such lands, whether now at the disposal of said county or hereafter accruing to said county under any law or laws of congress or the State of Iowa, which are in force or may hereafter be enacted in relation to said swamp lands and swamp land funds, as fully as the same now are or hereafter may be at the disposal or under the control of said county ; provided, however, that this contract is made subject to the conditions imposed by law in relation to such swamp lands, and swamp land funds, and that title to the same shall not be delivered up to the said party of the second part until at least ten miles of

said railroad, westerly from the east end of said county, is completed and put in operation in said county of Boone, except that the money now on hand, or that may hereafter be received by said county, may at any time be paid over to the said party of the second part, by order of the board of supervisors, to be used by said party of the second part, as the work progresses, but only in the construction of said road in said county.

" Provided further, that if ten miles of said railroad westerly from the east line of said county is not completed and put in running order in said county on or before the first day of January, A. D. 1866, then and in that case this contract shall become null and void, but not otherwise. * * * And the said party of the second part hereby accepts the said grant, subject to all the provisions of the act of congress of September 28, 1850, and hereby expressly releases the State of Iowa and the county of Boone from all liability for reclaiming said lands. This contract is to be and become of full force and effect, to be binding upon the respective parties hereto, according to the true meaning and intent hereof, from and after the same shall be ratified by a vote of the people of said county, as in such cases made and provided by law."

The petition further sets forth that at a special election for that purpose held on the 10th day of July, 1863, the said contract was approved by a majority of the votes cast ; and that on the 13th day of July, 1865, the said contract was, by said board of supervisors, pronounced valid, and held to be ratified and adopted.

That ten miles of the Cedar Rapids and Missouri railroad, running westerly from the east line of said county of Boone, was completed and put in running order in said county before the 1st day of January, 1866, to wit: about the month of July, 1865. That in July, 1866, the plaintiff requested the said county of Boone to perform said contract on the part of said county, but the said county

then refused, and still neglects and refuses so to do. A specific performance of the contract is prayed.

The answer admits the execution of the contract, and alleges that the board of supervisors had no authority to make it, and that it is without consideration; that the propositions contained therein were not submitted to the voters of the county in a legal manner; that notices or copies of the questions to be submitted were not posted at the places by law required; that there was no authority of law for holding the special election on the 10th day of July, 1863; that no notice of the adoption or ratification of the contract has ever been entered of record in the minute book, or published for four weeks in a newspaper published in the county; that the contract was not submitted to all the legal voters of the county, more than one hundred and seventy-five of them being absent in the volunteer military service of the United States; that the election was carried by fraud and bribery; that in consideration of said vote plaintiff agreed with a committee of said county to construct their road near the town of Boonsboro, and to erect a depot at such point as the committee might designate, which plaintiff failed to do; that said contract is void because said road was not completed ten miles in a westerly direction from the east line of said county, by the 1st of January, 1866. The cause was tried by the court, and a decree entered in accordance with the prayer of the petition. Defendant appeals.

*Philips & Philips* and *Hull & Mitchell* for the appellant.

*Cook & Kidder* for the appellee.

DAY, J. — I. As to the authority of the board of supervisors to call a special election for the purpose of submitting the question of the ratification of the contract. Appellant insists that such question can be submitted only at a general election, or at a special election called for some other pur-

1. BOARD of SUPERVISORS: county: swamp lands: elections.

pose in the mode authorized by law ; and that the board of supervisors have no power to call a special election for the purpose of submitting such question for ratification. The argument possesses some plausibility, but is believed not to be sound. Special elections are such as are held in pursuance of a special law, and such as are held to supply vacancies in any office, and may be held at such time as may be designated by such special law, or the proper officers duly authorized to order such election. Rev., § 460. Section 250 of the Revision (114 of the Code of 1851) provides that the county judge may submit to the people of his county at any regular election, or at a special one called for that purpose, the question whether money may be borrowed to aid in the erection of public buildings. The next section provides the mode of submission. Section 986 of the Revision, being section 1, chap. 132, Laws seventh general assembly, provides " that it shall be competent and lawful for the counties owning swamp and overflowed lands, to devote the same or the proceeds thereof, either in whole or in part, * * * for making railroads through the county or counties to whom such lands belong ; provided, that before any of said land for the proceeds thereof shall be so devoted to any of the purposes aforesaid, the question whether the same shall be done shall be submitted at some general or special election to the people of the county. This section was amended by chapter 77 of Laws of 1862, but the amendment does not affect its construction. Section 988 of the Revision provides that " Before such contract shall be of any force or validity, the same shall be published for four weeks immediately preceding some general or special election, in some newspaper published in the county * * * together with a proclamation of the proper officer directing how and when the vote thereon shall be taken, and returns made and canvassed, and in what manner and form the people shall vote thereon." This statute author-izes the submission of the question at a special election.

VOL. XXXIV—7.

Evidently the purpose was to enable the inhabitants of the county to ratify a contract for the disposition of their swamp lands, without waiting the recurrence of the annual general election. But as special elections at the call of the governor are not at all of usual occurrence, this purpose of the act would be defeated, if the question could be submitted at such special election alone. The power to do an act carries with it, by implication, the power to use all the necessary and usual means sufficient for the accomplishment of the act. It seems to us, therefore, that while these sections do not in express terms authorize any one to call a special election for the purpose indicated, they do by implication add another cause, for which the county judge, who at that time was the financial agent of the county, and charged with the management of its business, might order such election to be held. The act creating the board of supervisors took effect July 4, 1860, and provides that "The board of supervisors, at any lawful meeting, shall have the following powers * * * To represent their respective counties, and to have the care and management of the property and business of the county, in all cases where no other provision shall be made." Revision, § 312, subd. 11. Section 330 of the Revision provides: "That all laws which may be in force at the time of the taking effect of this act, devolving any jurisdiction or powers on the county judges, which said jurisdiction or powers are conferred on the county board of supervisors, by an act of the present general assembly, entitled 'An act creating a board of county supervisors, defining their duties, and the duty of certain county officers,' shall be held to apply to, and devolve said jurisdiction and powers upon, the said county board of supervisors, in the same manner and to the same extent as though the words 'county board of supervisors' occurred in said laws, instead of the words "county judge.'"

Since the passage of the act creating the board of super-

visors, it has been held that the county judge has no power to submit to the voters of the county any question in relation to the affairs of the county, and that this duty and right belongs exclusively to the supervisors. *Yant* v. *Brooks*, 19 Iowa, 90, 91; *Starr & Rand* v. *Board of Supervisors of Des Moines County*, 22 id. 491. It follows from these views, that, in our opinion, the board of supervisors had power to submit at a special election, for ratification, the contract under consideration.

II. It is next objected, that it is essential to the validity of the contract, that it should be submitted to *all* the legal voters of the county; that some of them were absent in the military service of the United States, to whom the question was not submitted. Independently of chapter 29, acts extra session ninth general assembly, it will not be claimed that any question should or could have been submitted to the vote of the soldiers absent from the State in the military service.

2. — submission to voters.

If any necessity existed in the present case for such submission, it was in consequence of the provisions of said act. But an examination of it shows clearly that it applies only to general elections, and does not impose the duty to submit, nor confer the right to vote upon any question presented at a special election. And even if this question had been submitted at a general election, the soldiers absent from the State would have had no right, under the provisions of said act, to vote upon it. See sections 5 and 6 of the act. We conclude that it constitutes no valid objection to this election, that the question was not submitted to those absent in the military service.

III. It is next urged that the contract should not be enforced, because of the fraudulent acts of plaintiff and its agents in procuring the signing of the contract, and the vote thereon. A public meeting for railroad purposes was held in the court-house at Boonsboro, June 1, 1863, at which a committee was appointed to

3. EVIDENCE: parol agreement.

enter into a contract on behalf of the citizens of said county. Upon the day following, this committee entered into a contract with Walker, plaintiff's agent, which recites that the people of said county propose to convey to plaintiff the swamp lands of said county, and contains the following provision : "And the citizens of said county further propose to pay to said company, within thirty days after the cars are running regularly on said road, to the town of Boonsboro, or to a point within one mile of the original plat of said town, the sum of $5,000 in cash, and a further sum of $5,000 in cash or its equivalent in land or produce at a fair cash valuation. It is understood and agreed, that for the $5,000 payable in cash, approved notes of the subscribers to that fund shall be given, payable in accordance with the terms of this agreement, without interest if paid at maturity, and if not, to draw ten per cent after that date. For produce, notes shall also be given, payable in like manner and time, in produce at merchantable rates, at the time of delivery, and to be delivered at the nearest station on said road." The citizens of the county further agree to furnish the right of way through said county free of expense to plaintiff. Plaintiff agrees to enter upon the construction of the road without delay, and to complete the same to some point within a mile of the original plat of said town, on or before the 1st day of January, 1866. It is claimed by defendant that, at the time this written contract was executed, it was further agreed, in consideration of the giving of $10,000 cash or property, the depot should be located within a mile of the public square, Boonsboro. That at the request of Mr. Walker, that part of the contract was not put into writing, he urging that, if the fact became known at Swede Point and places out of town, that the depot was to be located near Boonsboro, they would vote against the proposition. It is quite clear that this verbal agreement, if made, being a parol contemporaneous agreement varying the terms of a valid written

The Cedar Rapids & Mo. River R. R. Co. v. Boone County.

agreement, could not be established nor enforced. No complaint, however, is made of the failure of plaintiff to comply with this agreement, for it is established that the conditions upon which it was based have not been performed by the county. The principal fraud alleged is, that various citizens of the county, interested in securing the ratification of the contract, represented to the citizens of Boonsboro that the depot would be located within one mile of that place, and to the inhabitants of Swede Point and other places that they would be as likely to get the depot as would Boonsboro, thus securing the votes of all the localities in favor of the contract.

It does not appear that the plaintiff or its agents had any thing to do with these representations. And however unfair and reprehensible this conduct may be, it cannot affect the rights of plaintiff in this action.

IV. The contract stipulates that it shall become null and void if ten miles of said railroad westerly from the east line of said county are not completed and put in running order, on or before the 1st day of January, 1866. Appellant claims that this condition was not performed by plaintiff. This raises simply a question of fact. The evidence is conflicting, but a careful examination of it satisfies us that the decided preponderance is in favor of the finding of the court below.

We have thus examined all the objections urged in appellant's argument.

Discovering no valid objection to the decree of the court below, the same is

Affirmed.