## COURTWRIGHT V. STRICKLER.

1. **Railroad:** CONTRACT OF SUBSCRIPTION. A contract of subscription bound defendant to pay a certain sum to a railroad company upon the construction of its road to a depot, to be located within three-fourths of a mile of the corporate limits of the town of C, for which defendant was to receive certificates of stock. By a subsequent contract he surrendered his certificates of stock on condition that the company should construct its road by D. to said town of C. *Held,* that under proper construction of these contracts, defendant was liable on completion of the road, to a depot located within the distance of the corporate limits stipulated in the original contract.

2. —— In determining the distance mentioned, the measurement should be by a straight line from the corporate limits to the depot ; and if the depot is in the prescribed limit it is sufficient, though all the side tracks and switches are not.

3. **Jury and verdict:** CHALLENGE FOR CAUSE. Where it appeared that a juror was interested in a case upon a contract similar to that upon which the present suit was based, and had combined with others interested in like contracts, to defend the same, it was held that a challenge for cause was properly sustained.

4. **Evidence:** PAROL EVIDENCE. Where the considerations leading to a contract and forming its basis, are expressed in clear and unmistakeable language, parol evidence is inadmissible to vary or differently apply it.

5. **New trial:** ERROR WITHOUT PREJUDICE. Where the verdict would have been the same if evidence and instructions claimed to be erroneous had not been given, it is a case of error without prejudice, and the verdict will not be disturbed.

6. **Railroad:** CONTRACT OF SUBSCRIPTION. Under a contract of subscription to a railroad company of the character above mentioned, the jury were properly instructed that the point from which measurement is to be made, in order to determine whether the depot is built within the distance prescribed, must be the corporate limits of the town, without regard to buildings or improvements.

*Appeal from Davis District Court.*

WEDNESDAY, OCTOBER 22.

ACTION at law upon four contracts, three substantially in the form of the one of which the following is a copy :

" CENTERVILLE, Iowa, *May* 12, 1870.

" For value received, I promise to pay the Chicago and Southwestern Railroad Company one hundred dollars; one-half to be paid within ten days after said railroad shall have been completed and the cars running over the same to a permanent depot, to be located within three-fourths of a mile of the corporate limits of the town of Centerville, Iowa, and the other half to be paid within one year thereafter. *Provided,* that said railroad shall be constructed and the cars running thereon to said depot, on or before the 15th day of June, 1871, and, *provided* further, that on the payment of said sum, the Chicago & Southwestern Railroad Company shall issue to me stock in said company for the full amount of this note.

" D. L. STRICKLER."

The fourth instrument is in these words:

" $200. CENTERVILLE, Iowa, *October* 1, 1869.

I hereby promise to pay the Chicago and Southwestern Railroad Company of Iowa, two hundred dollars, ten days after the complete construction of its railway, and the running of the cars over the same to a point within three-quarters of a mile of the corporate limits of the town of Centerville, for which amount said company shall issue to me stock certificates; provided said railroad company shall locate a depot within three-quarters of a mile of Centerville; provided said road be completed in three years.

" D. L. STRICKLER."

The petition shows that the railroad company was released and discharged from issuing to defendant its stock certificates by two contracts executed by defendant which, are in substance and words, like the following copy of one of them :

" We, the undersigned, for the purpose of securing the loca‧tion of the Chicago and Southwestern railway by Drakeville, in Davis county, through Udell township, in Appanoose county to Centerville, do hereby agree to transfer to said Chicago and Southwestern Railway Company the certificates of stock to

which we may severally be entitled at such times as we shall be entitled to receive the same. Number of shares — 4 shares."

"D. L. STRICKLER."

The answer of defendant admits the execution of the several instruments sued on and set out in plaintiff's petition; but, as a defense to the action, alleges in several separate counts matters which in effect amount to a denial that plaintiff has performed its part of the several contracts, and avers that it has not performed the several conditions therein expressed.

There was a jury trial and verdict for plaintiff, followed by a motion for a new trial, which was overruled and a judgment rendered for plaintiff. Defendant appeals.

*T. B. Perry* and *M. H. Jones* for the appellant.

*Harris & Vermillion* and *Trimble & Carruthers* for the appellee.

BECK, Ch. J. — There are various errors assigned and presented in argument of counsel for defendant which will be considered in the order we find them discussed.

1. RAILROAD.

I. Certain instructions given to the jury, which express the construction placed upon the contracts involved in the action are made the first ground of objection. In these the court construes all the instruments together, those in the nature of subscriptions and the others agreeing to transfer the stock to the railroad company, holding that "the words "to Centerville," found in the release, when construed with the other contracts, mean to a point within three-fourths of a mile of the corporate limits of the town of Centerville," as expressed therein.

In our opinion the construction adopted by the district court is the true one. The contracts all relate to the same subject-matter, and the intentions of the parties in the execution of the more recent ones may properly be gathered from

the obligations expressed in those first entered into. The railroad company obligated itself in the subscription contracts to erect a depot within three-fourths of a mile of Centerville. That was one of the conditions which constituted the consideration of the contracts executed by defendant. It is not pretended that this condition is affected or discharged by the subsequent release. It remained a condition with which both parties are content. This being so, what object would defendant have in stipulating for the building of the road to, *into* the town of Centerville, when the depot was located three-fourths of a mile from it ? · The depot for Centerville was fixed by the instruments first made; that was the Centerville depot. It was both natural and proper in expressing the obligation of the corporation to build to a place chosen, or to be chosen as the site of the depot of the town, to use the words of the release "to Centerville." As the first contracts were not modified or annulled as to the location of the depot for Centerville, and as it is not reasonable to suppose that the second had in view the mere running of the railroad to the town, we must conclude that the language of the release contemplates the construction of the road to the place selected for a depot. There are other reasons which could be given in support of this construction, but those just presented suffice.

II. The court directed the jury that the distance within which the depot was to be built from the corporate limits of the town was to be ascertained by the measurement of a straight line, and that it is a sufficient compliance with the contract, if the main passenger and freight depot is within that limit; that it is not necessary that all the side tracks and switches of the road be therein. These instructions are correct. The points presented were ruled upon very similar facts in *The Cedar Falls & Minnesota R. Co.* v. *Rich*, 33 Iowa, 113.

III. Defendant's counsel argue that the railroad company, to comply with the contracts, and entitle them to recover thereon, were required to complete the whole road from the point of its commencement to its termination in Kansas. The

court ruled that the completion to Centerville only was required by the terms of the instrument. This construction is clearly correct. The very language of the writings demands it. The payments by the defendant are to be made after "the railroad shall have been completed and the cars running over the same to a permanent depot within three-quarters of a mile of the corporate limits of the town of Centerville." The meaning of these words are obvious. They require the completion to Centerville, and no farther.

IV. A challenge for cause to a juror by plaintiff was sustained by the court. The juror stated, upon his *voir dire*,

3. JURY AND VERDICT.

that he was a party to a contract substantially the same as the one sued on, given by him as a citizen of Drakeville to secure the location of the same railroad at that place; that he had united with others along the road to assist each other in making defense to the enforcement of the contract against the subscribers thereto; that he had formed an unqualified opinion as to the Drakeville cases pending on like contracts, but had formed no opinion upon the merits of this case. Upon these statements of the juror, plaintiff's challenge was sustained on the ground of bias. The ruling was clearly correct. The juror, from his own statement, had formed an opinion as to the merits of the case, for he confesses to an unqualified opinion as to a case just like it. Besides, he unmistakably exhibits his interest in this very case, as he shows he was united "with others along the road" to resist suits brought to recover upon contracts given for the same purpose and containing like conditions as the contract in suit. He, from his own showing, was not an impartial and uninterested juror. There could be no safety and certainty of justice in submitting the decision of questions of fact to persons standing in such a position.

V. The defendant proposed to prove by his own testimony, what the consideration was of the contract sued upon, but

4. EVIDENCE.

was not permitted so to do. The considerations are expressed in the instruments in unmistakable language, and parol evidence is not necessary in order to

understand it, and inadmissible to vary or differently apply it. The evidence was rightly rejected.

VI. The railroad depot is situated south of the town, and within three-fourths of a mile of the corporation limits, as they were at the date of the contracts first executed. These limits were fixed under an act of the legislature of 1857, chapter 100. In 1870 the organization of the town under its special charter was abandoned, and it was incorporated under the general law of the State. The plaintiff introduced in evidence, against defendant's objection on the ground of irregularity and insufficiency, the proceedings showing this last organization of the town. The object of this evidence seems to be to show the limits of the corporation, those last established being some distance south of the old boundary. It is insisted that the last incorporation is invalid for want of compliance with law.

5. NEW TRIAL.

The court instructed the jury that, as to the contracts first executed, the limits of the corporation should be regarded as those existing under the old charter, and as to the subsequent contracts, the jury were to determine whether the parties contracted with reference to them, or to those subsequently established by the new organization. Other matters relating to the different limits of the two organizations of the town, are stated in the instructions, which need not be mentioned.

We have seen that the depot was within the distance mentioned in the contracts, measuring on a straight line from the old town limits, and that it is not necessary, to comply with the conditions, that all the side tracks, switches, etc., should be within that distance. Considering the old boundary of the town as the line from which measurement is to be made, the railroad company complied with the contracts in locating the depot. This being true, the ruling admitting the evidence above mentioned, and giving the instructions just stated, may be regarded as erroneous (the point, however, we do not determine), yet it is without prejudice to defendant. Had the evidence been rejected, the verdict of the jury should have

been for plaintiff all the same; and had the instruction just referred to been withheld, the verdict could not have been different. In both cases, a different verdict could not have been sustained; for it would have been in conflict with the evidence and the other instructions given. As without the evidence and these instructions the plaintiff would have been entitled to a verdict, admitting the rulings in regard therto to be incorrect, defendant is not prejudiced thereby.

VII. The jury were instructed that the point or line from which measurement is to be made, in order to determine

6. RAILROAD.   whether the depot is built within the distance prescribed in the contract, must be the corporate limits of the town without regard to buildings or improvements. This is correct. The conditions of the contracts are to that effect and in the precise language of the instruction; the depot is to be built within three-quarters of a mile of the *corporate limits*, are the words of the instruments.

The instructions asked by defendant were either in conflict with the foregoing rules or in accord with those given. In either case they were properly refused.

The judgment of the district court is

Affirmed.