S. R. KELLY, Appellant, v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

**Railways: UNJUST DISCRIMINATION.** That a railroad furnishes fuel and ice and carries freight free for other eating houses with whom it has contracts, does not oblige it to do the same for one of its eating houses with whose owner no contract to do these things is made, there being no claim that the freight charges made plaintiff were excessive or a statement of classification or distance. Where all rates charged are reasonable, charging less in proper cases is not unjust discrimination. These rules are not applicable to actions to recover penalties provided by section 9, chapter 28, Twenty-second General Assembly.

**SAME: CONSPIRACY.** In the absence of a contract that a railroad company will stop its trains for meals at a certain hotel, it is not actionable for it to induce another to start a hotel at another point by agreeing to stop its trains for meals at said last hotel.

**Landlord and Tenant.** A lease provides that upon its expiration or if lessee fails to perform its conditions, the lessor may purchase the lessee's property at an appraised valuation. *Held*, the lessee can not, by acts that entitle lessor to declare the lease forfeited, compel such purchase.

Lease: consideration.  A renewal of an unexpired lease, without new consideration, is not binding.

Parol Variance.  ·Where a written lease is perfect and does not indicate that the parties intended to perform more than is written, all antecedent oral agreements on the subject are merged in the writing.  *Savill v. Chalmers*, 76 Iowa, 325, and *Day v. Town*, 54 Iowa, 364, *distinguished*.

Practice.  There are two amendments to a petition.  A demurrer is interposed after one is filed and sustained when the second is on file, the plaintiff electing to stand on his petition as amended.  *Held*, it is error to dismiss the cause and tax costs to plaintiff, the last amendment being in no way assailed.

*Appeal from Woodbury District Court.*—Hon. F. R. Gaynor, Judge.

Thursday, January 24, 1895.

Action at law to recover damages for breach of contract, for alleged overcharges of freight, and for discriminating against plaintiff in freight rates.  Defendant demurred to the petition, and, the demurrer being sustained, plaintiff elected to stand upon his petition, and judgment was rendered against him for costs, and he appeals.—*Reversed*.

*Warren Walker* and *John N. Weaver* for appellant.

*Taylor, Shull & Farnsworth* for appellee.

Deemer, J.—The pleadings in this case cover nearly thirty closely-printed pages of the abstract, and we will have some difficulty in stating the issues of law presented by the demurrer.   As best we may, we will endeavor to state the substance of these voluminous pleadings.

It is alleged in the petition, in substance, that in January, 1882, plaintiff entered into an oral contract with defendant, by the terms of which the defendant

agreed, in consideration of plaintiff's erecting and maintaining an hotel and railway eating house at the station of Sanborn, on defendant's line of road, to give plaintiff a good and sufficient deed to the land upon which the eating house was to be erected, and also agreed to furnish free transportation for all material entering into the construction and improvement of the building, and for the workmen and contractors engaged to erect the same, and further agreed to transport, free of charge, all supplies needed for use in the hotel after its erection, as well as free transportation to plaintiff and his employes engaged in and about the house; that defendant further agreed to furnish plaintiff, free of charge, all fuel and ice needed for use in the hotel, and agreed to stop all trains upon its line of road which would arrive at suitable times, that passengers and employes might take their meals at the hotel; that, pursuant to this agreement, plaintiff erected the contemplated hotel and eating house, at an expense of seventeen thousand dollars, and had the house completed and open for business on the tenth of July, 1882; that, about the first of July, plaintiff requested a deed for the premises, pursuant to the agreement, which the defendant refused to give, but in lieu thereof offered a lease for ninety-nine years, but thereafter refused to execute the lease for ninety-nine years, and would not do more than execute a lease for twenty years; that about November 1, 1882, a lease for twenty years was executed by defendant to plaintiff, which he accepted, for the reason that he could get nothing else from defendant, and, as he had already expended his money in the hotel, he was compelled to accept the lease; that the hotel was opened for business about July 10, 1882, by plaintiff and one Kaynor, under the firm name of Kaynor & Kelly, and was conducted by them until about August 1, 1883, and that during all this time the defendant complied with

all the agreements on its part, except to make the deed to the land.    That about August 1, 1883, the hotel, with the knowledge and consent of defendant, was leased by plaintiff to W. A. Kaynor, who continued to run the same until his death, in 1886; and that after the death of Kaynor the hotel was conducted by Kaynor's widow until August, 1887, at which time plaintiff resumed possession of the hotel, and continued to conduct the same as an eating house until the present time; that plaintiff has fully complied with all his agreements, and defendant respected all of its obligations, except as to the making of the deed, until plaintiff resumed possession of the house, in 1887, but that since that time it has in no respect complied with its agreements.    The plaintiff further charges that, in violation of its contract, defendant induced Mrs. Kaynor to erect an eating house at the town of Spencer, a point twenty-seven miles from Sanborn, and caused its trains to stop there for meals, and not at plaintiff's house; that since August 1, 1887, defendant has failed to deliver freight to plaintiff free of charge, and plaintiff has been compelled to expend large amounts therefor; that since September, 1888, defendant has failed to furnish fuel, as agreed, and since January 1, 1891, has failed and refused to furnish ice, and has also, since the date last mentioned, refused to furnish plaintiff, his family, and employes with free transportation, all to his great damage.    Plaintiff further alleges that at the time of the construction of the hotel the defendant, for the convenience of plaintiff's guests, constructed and erected a platform extending from its railway tracks to the hotel, the same being the entire length of his hotel, but that notwithstanding plaintiff's lease, and rights thereunder, defendant, in the fall of 1891, wrongfully trespassed upon plaintiff's premises, and tore down the platform, to his great damage; that from the time plaintiff resumed possession of the hotel,

down to the present, defendant has prevented conductors of trains reaching Sanborn at times for meals, from permitting their passengers to patronize the hotel, and has otherwise injured plaintiff's business. A copy of the lease is attached to the petition, and will be hereafter referred to. In an amendment to the petition, it is charged that defendant's agreements were made in consideration of the benefits to be derived by it from the establishment and maintenance of the eating house on its line of road; that at the time plaintiff resumed possession of the hotel, in August, 1887, it was again agreed by defendant as an inducement to plaintiff to take charge of the hotel, that it would continue, during the term of the lease, to fulfill its agreements before set forth on its part, and that said lease was extended, and has ever since been in force. The amendment also contains a second count for alleged overcharges of freight. It is averred that from August, 1887, to August, 1892, defendant has transported goods for its other eating houses free of charge, and has given rebates of the amount of said freight to all persons doing a like business on its line of road, but has charged plaintiff the full freight rate, which he has been compelled to pay. He also alleges that defendant has furnished fuel to its other eating houses free of charge, but that plaintiff has been compelled to pay for his fuel, at a large expense. Plaintiff further alleges, as a third count, that defendant has violated the terms of the lease and agreement, in this: that the lease provides for an appraisement and sale of the property to the defendant, under certain conditions, in the event of the termination of the lease. He avers that the lease has been terminated by the acts and conduct of defendant, and that, by reason thereof, defendant has become liable for the property, at its fair appraisement; that

plaintiff has offered to have the property appraised; and that defendant has refused to fulfill its part of the agreement with reference thereto, and by reason thereof has made itself liable for the full value of the property. As a fourth count to the petition, plaintiff alleges that the defendant has charged and collected from him the sum of one thousand nine hundred and sixty-one dollars and eighty cents for freight on goods used by him, and for fuel and ice purchased by him, and for transportation paid out by himself, his family, and employes; that, during all the times covered by the overcharges, defendant has, by special rebate, drawback, or other devise, furnished such transportation and material to other eating houses on its line of road free of charge, and that it has furnished the same free of charge to other parties, for doing for them a like contemporaneous service, in the transportation of a like kind of traffic, under substantially similar circumstances and conditions, while at the same time for the same service, they have charged plaintiff the amount above set out; that defendant has given to other eating houses an undue and unreasonable preference and advantage over plaintiff. In an amendment to the petition, filed April 29, 1893, plaintiff further alleged that on the faith of the renewal of the agreement of August, 1887, and relying on defendant's compliance therewith, plaintiff expended a large sum in refurnishing and refitting the hotel, which outlay, by reason of the conduct of the defendant, has proved of no value, and the furniture and fixtures obtained by plaintiff have been rendered entirely worthless by the conduct

of the defendant. Plaintiff, by reason of all the matters above set forth, demanded judgment for the aggregate sum of fifty-seven thousand five hundred dollars. On the twenty-first day of March, 1893, the defendant filed a demurrer to the several counts in the petition, and to each of them separately, for the reasons: "(1) That all the alleged oral agreements between the parties became merged in the written lease executed between the parties in July, 1882, and that the petition fails to show that any of the agreements contained in the lease have been broken. "(2) To the second count, because it is not shown on the face of the petition but that, for all the services for which charges were made, the defendant was entitled to charge therefor the amounts for which recovery is sought. "(3) To the third, for the reason that plaintiff fails to state that any of the contingencies provided for in said lease have arisen, by reason of which plaintiff would be entitled to have the property appraised, and to have judgment against the defendant for the value thereof. "(4) To the fourth division, for the reason that it fails to show wherein defendant charged and collected of plaintiff excessive freight rates for transportation of property and goods, and for the further reason that there is nothing stated to show that the charges collected by defendant of plaintiff for services therein alleged to have been performed for plaintiff were unreasonable or unjust, and there is nothing in the allegations of said division to show but that, if such services as therein alleged were performed for other like eating houses, the same were performed by reason of some contract or agreement which would constitute a valuable consideration, and be binding upon defendant to do." It will be noticed that this demurrer was filed before the amendment to the petition of April twenty-third, and there is nothing to

show that it was to apply to this amendment. The court sustained the demurrer, and dismissed plaintiff's petition, and rendered judgment against him for costs, and plaintiff appeals.

The lease which is referred to, attached and made a part of the plaintiff's petition, recites that it is made for the term of twenty years from and after November 1, 1882, and at the rental of one dollar per annum, and "In consideration of the stipulations and agreements herein contained, upon the part of the second party to be performed." These stipulations and agreements relate to location, construction, and management of the hotel by Kelly, and need not be further referred to. They have already been considered, and are quite fully set forth, in the case of *Fletcher v. Kelly,* 88 Iowa, 475 (decided by this court May 23, 1893).

The only obligations imposed upon the company were to give plaintiff the use of the ground during the term, and at the expiration thereof, if the first party should refuse to renew or extend the same, or upon its termination by default or otherwise, the first party (defendant) shall take title to the buildings, outhouses, and improvements; the amount of money to be paid therefor by the defendant to be ascertained by appraisement. But it was provided that if the lease was determined by default, forfeiture, or failure of the plaintiff to perform his agreements, then defendant was obliged to pay but two-thirds of the appraised value. It was further provided that if, at the expiration of the term, defendant was willing to renew the lease, but plaintiff was not, then defendant might, at its option, take the buildings at the appraised price, or require plaintiff to remove the same. It was also mutually agreed that the stipulations on the part of each party to the lease were to be binding upon their successors and assigns. It is to be observed that none

of the alleged agreements upon which plaintiff relies in the first count of his petition are contained in this written lease, and the questions with reference to the first count of his petition are: Were all the prior agreements and engagements merged into the written lease? Can plaintiff prove these alleged agreements by parol? And was there any consideration for the alleged renewal agreement of August, 1887?

The contract of lease is perfect in all its parts. Defendant agreed to lease to plaintiff the ground on which the hotel was built, for the term of twenty years, in consideration of the annual rental of one dollar, and the stipulations and agreements of plaintiff with reference to the construction, location, and conduct of the hotel after it was erected. There is nothing uncertain or ambiguous in the lease, and nothing to indicate that the parties intended anything further to be done by defendant than is stated in the lease itself. No doubt, defendant was to be much benefited by the erection of an eating house on its line of road, which should be conducted in the manner provided for by the lease. But the benefit thus conferred was, by the parties, evidently and expressly measured by the reduction of the rent to the mere nominal sum of one dollar per annum. The consideration for the benefit derived is expressed in the lease, and is no more subject to parol modification than any other condition therein contained. *Blair v. Buttolph,* 72 Iowa, 31, 33 N. W. Rep. 349; *Gelpcke v. Blake,* 19 Iowa, 263; *Courtwright v. Strickler,* 37 Iowa, 382. The plaintiff was not bound to accept the lease in question. He could, if he had seen fit, have refused to accept it, and relied upon his parol contract with defendant, and no doubt, could have had specific performance of the same; or he might, when defendant refused to execute one in accordance with their parol understanding, have immediately brought action for

his damages. But, instead of this, he accepted the written lease, and has been acting thereunder or relying thereon down to the present, for he is now insisting upon defendant's liability under the express terms thereof. He cannot be allowed to prove other and different considerations from those stated in the lease, nor enlarge upon its terms, by parol testimony. *Barhydt v. Bonney*, 55 Iowa, 717, 8, N. W. Rep. 672; *Cedar Rapids & M. R. R. Co. v. Boone Co.*, 34 Iowa, 52; *Dunbar v. Stickler*, 45 Iowa, 384; *Lewis v. Day*, 53 Iowa, 576, 5 N. W. Rep 753; *Bank v. Snyder*, 79 Iowa, 191, 44 N. W. Rep. 356. The rule is elementary that, where a contract is reduced to writing, the writing affords the only evidence of the terms and conditions of the contract. All antecedent and contemporaneous verbal agreements are merged in the written contract. The law will not allow that an agreement, in such case, may rest partly in writing and partly in parol. So that it is equally inadmissible to add to, take from, or specifically change the terms of a written agreement by parol. 1 Greenl. Ev. section 275; *Forsyth v. Kimball*, 91 U. S. 291; *Harris v. Goldsmith*, 43 Ill. 309; *Grey v. Grey*, 22 Ala. 233. When a contract of lease is explicit, it is not competent to show by parol that more or less rent was agreed upon, or that other rights and privileges than those named in the lease were given, or, indeed, to aid in its construction. Wood, Landl. & Ten. p. 157 *et seq.*, and cases cited; Browne, Par. Ev. p. 157 *et seq.*, and cases cited; *Naumbery v. Young*, 44 N. J. Law, 331; *Tracy v. Iron-Works Co.*, 104 Mo. 193, 16 S. W. Rep. 203, where a learned discussion of the subject will be found; *Wodock v. Robinson*, (Pa. Sup.), 24 Atl. Rep. 73; *Eberle v. Trust Co.* (Pa. Sup.), 4 Atl. Rep. 808; *Johnson v. Oppenheim*, 55 N. Y. 280; *Scholz v. Dankert*, 69 Wis. 416, 34 N. W Rep. 394; *Hovey v. Newton*, 7 Pick. 29. The case at bar does not come within any of the

recognized exceptions to the general rule, above announced. Nor is it in any respects like the case of *Saville v. Chalmers*, 76 Iowa, 325, 41 N. W. Rep. 30. That was a case where plaintiff was seeking to recover on a parol warranty of the quality of lands conveyed by deed which did not contain a warranty; and it was held that the office of the deed was simply to transfer the title—a delivery, so to speak—of the subject of the contract, and that it was not to be supposed that the whole contract between the parties was incorporated in the deed made by the grantor in consummation of the sale of the land. The difference between such an instrument and the lease in question, which purports to contain many stipulations and agreements between the parties, is clear. The case of *Day v. Lown*, 51 Iowa, 364, 1 N. W. Rep. 786, also relates to a deed of conveyance. *Atherton v. Dearmond*, 33 Iowa, 355, cited by appellant's counsel, supports the rule we have announced. We are quite clear that the oral agreements between these parties were merged in the written lease.

As to the alleged renewal of the lease made in August, 1887, it is sufficient to say that plaintiff was under obligation, by the terms of his lease, to continue to conduct the hotel during the period covered by the lease, and the lease needed no renewal. It was then in full force, and the term created thereby had not expired. The alleged renewal agreement was without consideration, and is therefore not binding upon the parties.

In the last amendment to the petition, plaintiff alleges that on the faith of the renewal agreement, and relying upon compliance therewith, plaintiff refurnished and refitted the hotel at large expense, and that, by reason of defendant's failure to comply with its agreement, the furniture and

refittings became wholly worthless. The abstract shows a peculiar state of the record with reference to this amendment. February 23, 1893, plaintiff filed an amendment to his petition, setting forth the alleged renewal of August, 1887, which we have just considered, and also pleading the second, third, and fourth counts to the petition. Defendant's demurrer was filed March 21, 1893, and goes to all the counts of the petition, as we have before stated. On April 23, 1893, plaintiff filed this last amendment to the petition, which we are now considering; and, so far as shown, no attack was made on it. There was no agreement that the demurrer already filed should apply to it, and no question seems to have been made regarding it. Yet the court, after sustaining the demurrer filed, dismissed the plaintiff's petition, and rendered judgment against him for costs. We are unable to say whether the court's attention was called to this or not. But the record does show that plaintiff elected to stand upon this petition and amendments thereto, and yet the court rendered judgment dismissing the action at plaintiff's costs, and that plaintiff not only excepted to the ruling on the demurrer, but to the judgment dismissing the action and taxing the costs to him as well. We think the court was in error in dismissing the whole cause of action, because the last amendment to the petition, setting forth the damage done to plaintiff by reason of his incurring certain expenses on the faith of the new agreement, was not attacked in any manner, and no question was made as to the sufficiency of this part of the petition.

II.   The second count of plaintiff's petition alléges that defendant had collected freights from him from 1887 to 1892, and that during said time it had given rebates to other eating houses along its line of road, to the amount of said freights; that it had given rebates, to the amount of said freights, to all other persons doing a like business with plaintiff on its line of road, and during the same time had collected full rates from plaintiff.    Plaintiff also alleges that defendant has furnished fuel to its other eating houses on its road, free of charge, but has charged plaintiff therefor.    We do not understand on what theory plaintiff can recover of defendant the amount paid out by him for fuel by reason of the fact that it has furnished others with fuel without charge, and we are given none by appellant's counsel.    So that this part of the second count is clearly demurrable.    It will be noticed, in reference to the freight charges, that plaintiff does not claim that the freight paid by him was in excess of the reasonable schedule rate, or that the sums paid were excessive.    He simply charges that others in a like business were given drawbacks or rebates equal to the full amount of the freight charges.    In other words, no charge was made against them for the transportation of goods.    The action is not to recover a penalty, but the amount of freight paid by plaintiff, and must be bottomed upon the theory that the amount paid by him was unreasonable and extortionate, although he does not so charge.    Is it the law, then, that, because a railroad carries freight free for one person, it is bound to do so for all who are engaged in a like business, or suffer the penalty of returning all freight received, in the event it does not do so?    If such be the law, then, if a railway company carries for one of a class of persons free, it must carry free for all of

.that class. We do not think that any case can be found which goes to this extent. The true rule, as we understand it, is that under like circumstances, and for the same class of goods, the same rate should be charged to all. But this rule is subject to the qualification that, where a rate of freight is reasonable for all customers, contracts for a less rate may be made in special cases, when, under all the circumstances, the discrimination is reasonable and just. A mere discrimination in favor of a customer is not unlawful, unless it is unjust discrimination. See 1 Wood, Ry. Law, section 197; *Cook v. Railroad Co.*, 81 Iowa, 551, 46 N. W. Rep. 1080. Applying this rule to the case at bar, and it will be noticed that the petition does not allege that, for a like service, defendant carried for others free of charge. It does allege that others engaged in a like business with plaintiff had their freight free; but there is no allegation that the goods carried for plaintiff were of the same classification as those carried for others engaged in a like business with plaintiff, nor is there any allegation regarding distance or character of goods.

Again, it is charged that others doing a like business with plaintiff were not charged for carrying their goods. Now, plaintiff was conducting an eating house under an express contract for the benefit of the defendant company, in which we have held that all the conditions are fully expressed. And, under the allegations of the pleading, others who were engaged in a like business had their freights free. It is evident, then, that the charge is that others who were conducting eating houses for the benefit of the defendant, under express contracts, had their freight free. According to the petition, the whole matter is relegated to the domain of contractual relations, and there is nothing to show that plaintiff and the others to whom

he refers had the same kind of contracts. The company may well have considered the benefits to be derived from one eating house were much more than from another, and may have agreed to pay the proprietor of one more than it did another. Any other rule would compel the defendant company to make leases of its grounds for eating-house purposes on the same terms and conditions with all persons, without reference to the difference in benefits to be derived on account of location, character of building, ability of lessee, or any other of the many considerations which always enter into such transactions. We do not think a cause of action is stated in the second count.

III.    The third count relates to an alleged forfeiture of the lease, and seeks to recover from the defendant the full value of the hotel property, under the terms of the written lease. It is sufficient to say that the lease provides that at the expiration of the term of the lease, or upon failure of plaintiff to perform the conditions contained therein, the defendant had the election to purchase the property at an appraised valuation. The term created by the lease has not expired, and will not for many years; and it would be a strange doctrine to announce that plaintiff might, by his own misconduct, bring about those things which would authorize defendant to declare a forfeiture, and then insist that defendant should declare it, and purchase the property. Plaintiff will not be allowed to take advantage of his own wrong in this manner. This count is based upon the lease, as written, and it is not charged that defendant has violated any of the agreements set forth therein to be done and performed by it. It is clear that no cause of action is set forth in this count.

IV.    The fourth count is based upon alleged unjust and unreasonable charges made by defendant for serv-

ices rendered plaintiff, and seeks to recover back all
freight paid by him since August, 1887; all amounts
paid out by him for fuel and ice; and for failure to fur-
nish transportation for himself, his family, and
employes.   What we have said with reference
to the second count is applicable to the one we
are now considering, and need not be repeated here.
We are not prepared to commit ourselves to the doc-
trine that because a railroad company carries freight
free of charge to one of its eating houses, and furnishes
the proprietor with fuel, ice, and transportation for
himself, his family, and his employes, it is bound to do
so for all, without reference to the contractual rela-
tions existing between them.   Nor are we prepared to
say that, because a railroad company carries the goods
of one free of charge, it is bound to so carry for all
under like conditions.   The fact that it carries for one
for a less rate than for another, under substantially
similar circumstances and conditions, is a matter of
more or less conclusive importance in determining
what is a reasonable rate.   But we do not think that
a free rate can ever be considered, in determining what
is a reasonable rate.   This is certainly true where, as
in this case, the whole matter is one of contract, and
the rebate is given in consideration of benefits derived
from the establishment of eating houses along its line
of road.   As sustaining our conclusion to some extent,
see *Chicago, B. & Q. R. Co. v. People*, 77 Ill. 443; *Paxon
v. Railroad Co.*, 56 Iowa, 427, 9 N. W. Rep. 334; *Railroad
Co. v. Rust*, 58 Tex. 98; *Hersh v. Railroad Co.*, 74 Pa. St.
181; *Chicago & A. R. Co. v. People*, 67 Ill. 11; *Railroad Co
v. Gage*, 12 Gray, 393; *Ragan v. Aiken*, 9 Lea
(Tenn.) 609.   It is important to note that this
action is not brought to recover the penalties
prescribed by section 9, chapter 28, Laws Twenty-sec-
ond General Assembly, but for unjust and unreason-

able charges under the common law. And the rules
we have announced are not intended to apply to actions
for recovery of penalties or forfeitures under any of
the sections in said chapter.

V. It is also claimed in the original petition that
defendant conspired with Mrs. Kaynor to injure and
destroy plaintiff's business by diverting custo-
mers from plaintiff's hotel to the eating house
established by Mrs. Kaynor at Spencer, and that
defendant changed its schedule of time so as that its
trains reached Spencer for meals. We see nothing in
the petition which charges an actionable conspiracy.
Defendant had a right to run its trains as it saw fit,
and also had the right to supply meals to its passengers
at any place it desired. The lease made between plaint-
iff and defendant did not obligate defendant to stop
its trains for meals at his house. In doing what is
charged against it, defendant was neither doing an
unlawful act, nor a lawful act in an unlawful manner.
The motive with which one does an act furnishes no
cause of action, unless there be some legal wrong; and
not then, if it relate to a breach of contract.

The court was in error in dissmissing plaintiff's
petition as amended April 29, 1893, because the same
was not attacked, and for that reason the judg-
ment of the District Court is *reversed*.