CHAPIN T. ARNOLD *vs.* ANDREW A. MOFFITT.

.FEBRUARY 25, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Action for Malicious Acts in Performance of Duty.*

Plaintiff brought an action of case to recover damages claimed to have been sustained in his business as an electrician by reason of malicious acts, or omissions, delays, or discrimination, on the part of defendant, an electrical inspector employed by the Insurance Association of Providence. Plaintiff was licensed by said association, and was required to have his work inspected by said association before the electric lighting company would permit the current to be turned on.

By the terms of the license issued to plaintiff, such license might be revoked upon failure of plaintiff or his employees, "to conform to the rules of the association and the Electric Light Co.":—

*Held,* that, by accepting such license plaintiff agreed to conform to said rules in all his work.

Evidence considered, and *held,* that there were no acts established to show that defendant had been guilty of any such neglect or refusal to comply with the rules which it was his duty to enforce as to make him liable as for unlawful acts against the plaintiff whereby plaintiff had been damaged.

(2)   *Malice, in Lawful Acts.*

An act lawful in itself is not converted by a malicious or bad motive into an
   unlawful act so as to make the doer of the act liable to a civil action.

(3)   *Same.*

Where there is no proof of any illegal act on the part of a defendant, it is of no
   consequence that it might be made to appear that defendant was actuated
   by malicious motives; for malice can not be implied, except upon proof
   of acts of a strictly illegal character.

TRESPASS ON THE CASE.   Heard on exceptions of defendant,
and plaintiff ordered to show cause why judgment should not
be entered for defendant.

PARKHURST, J.   This is an action of the case in which the
plaintiff seeks to recover from the defendant damages claimed
to have been sustained by the plaintiff in his business as an
electrician and contractor. for electrical work, by reason of
malicious acts, or omissions, delays or discriminations, on the
part of the defendant and against the plaintiff.

The defendant, prior to the several acts complained of, and
during the time covered by these acts, and thereafter to the
time of trial, was an electrical inspector employed by the Insur-
ance Association of Providence.   At the time of the trial in the
Superior Court (March 1909), the plaintiff had been engaged in
the business of an electrician and contractor for electrical work
for at least four years, although from the report of his testimony
it is doubtful whether he testified that he began work as such
electrician in 1894 or in 1904, and his certificate of license from
the Insurance Association of Providence, set forth on pp. 48–49
of the transcript of testimony, bears date April 16, 1901.   At all
events, it is not disputed that during the time of the acts com-
plained of in the declaration he was required to have his work
inspected by the Insurance Association of the City of Providence
before the Narragansett Electric Lighting Company would
permit the current to be turned on.   The Insurance Association
of the City of Providence, is a voluntary association of domestic
fire insurance companies and the agents of foreign companies
doing business in Providence.

The plaintiff was licensed by said insurance association, as
follows:

"INSURANCE ASSOCIATION OF PROVIDENCE, No. 15.

"PROVIDENCE, R. I., April 16, 1901.

"This is to certify that Chapin T. Arnold having been duly examined and found to be competent is hereby licensed by this association to do electrical wiring and installing electrical apparatus in or about buildings within the jurisdiction of this association. This license may be revoked by this association upon the failure of the above contractor or his or their employees to conform to the rules of the association of Providence and the Narragansett Electric Light Company within one week after written notification of breach of rules has been given.

"(Signed) INSURANCE ASSOCIATION, OF PROVIDENCE,
 "By GEORGE A. WALDRON,
 "*Surveyor.*

 "A. A. MOFFITT,
 "*Electrical Inspector.*"

In order to decrease the fire hazard, this association has in the past examined and issued licenses to electricians, including the plaintiff (as above shown), and has caused an inspection to be made of the work of such electricians to determine whether the work was properly done according to its rules and according to the rules of the Narragansett Electric Lighting Company and the rules of the National Board of Fire Underwriters. The Narragansett Electric Lighting Company turned on the current only after the issuance of a certificate by the insurance association. This certificate was issued after final inspection on completion of the work of installation of wires and fixtures. A "rough wiring inspection" was made after the wires had been installed and before they were covered up by laths and plaster.

It was customary for the Narragansett Electric Lighting Company to issue service slips in duplicate, one to the electrical contractor and one to the electrical inspector for the insurance association, upon which the plan of work to be done by the contractor was set forth; and the rough wiring inspection was made by the inspector of the insurance association upon receipt of the plan and notification that the wiring was ready for inspection.

This inspection was usually made within twenty-four or forty-eight hours after notice. The final inspection was made after notice from the contractor or the person furnishing the fixtures. If no changes were ordered made after final inspection, a certificate was issued by the insurance association to the Narragansett Electric Lighting Company, and the current could then be turned on.

(1) Such, in brief, was the situation between the parties, as set forth in the pleadings and proofs. It is to be noted that, by the terms of the license issued to the plaintiff, such license might be revoked upon failure of the plaintiff or his employees "to conform to the rules of the association of Providence and the Narragansett Electric Light Company within one week after written notification of breach of rules has been given." The plaintiff therefore agreed, by accepting such license, to conform to said rules in all his work.

The plaintiff in his declaration having premised the situation and relations of the parties as above set forth, proceeds to allege that "it became and was the duty of the defendant in his official capacity as inspector as aforesaid, to inspect all the plaintiff's wiring . . . . promptly, fairly and impartially and to report thereon promptly, fairly and impartially, so that the plaintiff would not be hindered, delayed, damaged and injured financially or in his reputation as an electrician or electric contractor or otherwise, through the failure of the defendant to make such prompt, fair and impartial inspection of the plaintiff's wiring . . . and promptly, fairly, and impartially to make report thereon.

"Yet the defendant, disregarding his duty in this behalf and wilfully and maliciously intending and contriving to injure the plaintiff in his said business and in his reputation as an electrician and electrical contractor and as a business man, and to cause him loss and damage therein and thereby and to injure his reputation therein," . . . did the several acts complained of in the distinct instances set forth in the ten counts of the declaration, viz.:

1. Neglect, fail, and refuse for an unreasonable length of time, to wit, for more than three months, to inspect and report

upon certain wiring in houses on Francis street, Providence, in 1905.

2.  Neglect and refusal to inspect certain wiring in the tailor shop of A. L. Sutton, in August 1906; and refusal to report thereon  unless the plaintiff would make certain unnecessary and unreasonable changes, which the plaintiff was thereupon compelled to make.

3.  Neglect and refusal to report to the Narragansett Electric Lighting Company in the matter of  the wiring at the house of Mark Streicher on Public street, in January, 1906.

4.  This count relates to wiring in a house in Riverside, as to which inspection was made by Mr. Myrick, the defendant's assistant, and the defendant had nothing to do with it; this count was withdrawn by the court from the consideration of the jury.

5.  As to work done on the house of  Daniel Riley, on Woonasquatucket avenue, Providence, as to which it appeared from the testimony that the inspection was made by said Myrick, and the defendant had nothing to do with it; this count was withdrawn by the court from the consideration of the jury.

6.  Plaintiff alleges that he was maliciously ordered by defendant to do unnecessary work at the house of Dr. Kelley, of Smith street, in June, 1907.

7.  Charges that the defendant maliciously used his influence to induce one William W. Chase to employ an electrical contractor other than the plaintiff.

There was no evidence to support this count, or to show any damage to plaintiff; and this count was withdrawn by the court from the consideration of the jury.

8.  Charges that the defendant in May, 1907, maliciously represented to the Citizens Savings Bank, Thomas P. Smith, contractor and builder, and Charles H. Philbrick, an insurance agent, and one of  the managers of  the insurance association, that the plaintiff's bill for certain work in which they were interested was exorbitant.

9.  Charges that the defendant maliciously ordered lathers to cover up rough wiring at a house belonging to one Hudson,

at the corner of Wayland and Irving avenues; in Providence,. whereby the plaintiff was hindered and delayed; that was about April 1, 1907. The plaintiff admitted that he suffered no damage by reason of delay, and the court charged the jury that they could not assess damages under this count.

10. Charges that the defendant, in November, 1907, maliciously compelled the plaintiff to follow.rules, in wiring a building at the corner of Weybosset and Clemence streets, different from those followed by a contractor in an adjoining building.

The primary and paramount duty of the defendant, by reason of his employment as an inspector by the insurance association, was to enforce the rules adopted by the association regarding the installation of electric wires against all electrical contractors,. including this plaintiff. The necessity for a rigid inspection to compel compliance with such rules is a matter of great importance, and involves the protection of life and property. Can it be said, under the evidence in this case, that the defendant has been guilty of any such neglect or refusal to comply with such rules as to make him liable as for an unlawful act against the plaintiff, whereby the plaintiff has been damaged? We find no evidence of any such illegal act on the part of the defendant.

Taking the counts which were submitted to the jury, in their order, we find as to the first count, which charges neglect and refusal to inspect and report for more than three months, that the evidence shows only a delay of four or five days in making a "rough-wiring" inspection; that there is no rule requiring a "rough-wiring" inspection within any certain number of hours or days after notice; that the defendant did make three inspections at this place, and no changes were required; that the defendant was at this time (1905) the sole inspector, and that he made his inspections as promptly as he could; and that he had no knowledge that he was causing delay or expense to the plaintiff; and that the plaintiff received the full contract price without deduction. There is here no evidence of any illegal act on the part of the defendant whereby he became liable to the plaintiff. At most, there is evidence only as to some slight misunderstanding as to the time when notice was given that the "rough-wiring" was ready for inspection.

As to the second count, charging neglect and refusal to inspect and report upon wiring in the tailor shop of A. L. Sutton, in August, 1906, unless the plaintiff would make certain unnecessary and unreasonable changes, which the plaintiff was thereupon compelled to make, it appeared by the testimony that the Narragansett service slip called for a three-wire system, and that the plaintiff had not complied with this requirement, and the inspector refused to pass the work unless this requirement was complied with; that the plaintiff appealed to the Narragansett Electric Lighting Company and got an inspection made by its employees, which consumed much time; and that the defendant still insisted upon the changes, over the plaintiff's objection, which changes were finally made, after much delay.   Here there is no evidence that the defendant acted in any way illegally, or that he did anything more than to act strictly in accordance with the rules which the plaintiff was bound to obey.   No rule is pointed out under which the plaintiff could have justified his refusal to obey the inspector's orders, and no rule is called to our attention to which it is claimed that any forced or improper construction was given by the defendant.

As to the third count, charging neglect and refusal to report to the Narragansett Electric Lighting Company in the matter of the wiring at the house of Streicher, on Public street, in January, 1906, the plaintiff's assistant Loomis, who did the work at this house, admitted in his testimony that the changes which he made were necessary, and it appears that the delay in issuing the certificate was caused by the plaintiff's failure to do his work properly.   Again, as was said regarding the second count, there is no evidence that the defendant acted in any way illegally, or that he did anything more than to act strictly in accordance with the rules which the plaintiff was bound to obey.   No rule is pointed out under which the plaintiff could have justified his refusal to obey the inspector's orders, and no rule is called to our attention to which it is claimed that any forced or improper construction was given by the defendant.

The fourth and fifth counts were not allowed to go to the jury.

As to the sixth count, the same remarks apply as above made regarding the second and third counts. The trouble in this matter seems to have been caused by Dr. Kelley, who refused to allow the plaintiff to put in an extra switch as ordered by the defendant. Again the defendant appears to have obeyed the rule.

The seventh count was not submitted to the jury.

As to the eighth count, charging that the defendant maliciously represented to the Citizen's Savings Bank, Thomas P. Smith, a contractor, and Charles H. Philbrick, an insurance agent and one of the managers of the insurance association, that the plaintiff's bill for certain work in which they were interested was exorbitant, it appeared by the testimony that in 1907 the plaintiff had been hired by Mr. Smith to do the electrical work necessary in repairing the Savoy Building after a fire, and that the insurance companies interested in the loss had elected to replace the building in its former condition, so that the bill for electrical work was to be paid by the insurance companies represented by Mr. Philbrick. It appeared that Mr. Philbrick was informed by Mr. Smith that the plaintiff's bill would probably be large, and that Mr. Philbrick asked the defendant, as an expert, to look over the work and tell him how much it ought to cost. Mr. Moffitt did this to accommodate Mr. Philbrick, because the latter was a member of the insurance association, and afterwards apologized to the plaintiff and said he was sorry that he was called into it. It is to be noticed that the general contractor, Mr. Smith, was the one who first called Mr. Philbrick's attention to the probable large amount of the plaintiff's bill; that Mr. Moffitt came into the matter at the request of Mr. Philbrick, who was, in a sense, his employer, or one of his employers: so that it was quite natural for Mr. Philbrick to call upon Mr. Moffit for an opinion, as he was the one person, outside of Arnold and his employees, who could most readily give an opinion. While it was strictly no part of the defendant's duty as an inspector to give such an opinion, we can not say that the defendant did any wrong or injury thereby; and there is no evidence that the opinion given was other than a fair and honest opinion. If the plaintiff was put to expense and loss by reason of the re-

fusal to pay his bill, his remedy was against the parties who were liable to him upon the contract, rather than against this defendant who stood in the relation of an expert witness in the matter.

As to the ninth count, the jury were instructed that no damages should be assessed.

As to the tenth count, wherein it is alleged that in November, 1907, the defendant maliciously compelled the plaintiff to follow rules, in wiring a building at the corner of Weybosset and Clemence streets, different from those followed by a contractor in an adjoining building, the testimony plainly showed that the change required to be made in the work was in accordance with the rules of the Narragansett Electric Lighting Company.

(2)     We do not find, therefore, that in any of the matters complained of in the declaration, the defendant has been guilty of any illegal act whereby the plaintiff has been damaged.

But the plaintiff appears to proceed upon the theory that, although the defendant may not have done any illegal act, yet he is liable to the plaintiff by reason of the malicious character of his acts. The declaration is framed upon this theory, and the opening line of the plaintiff's brief says, " This is an action on the case for malicious injury done to the plaintiff's business," etc. In other words, the plaintiff seems to believe that it is so well settled that malice is the gist of the action, and that proof of malice in doing the acts complained of shows a good cause of action, that he seems to treat it as a foregone conclusion and cites no cases whatever in support of this proposition. We are unable, however, to agree that this view of the law is correct. On the contrary, we find the overwhelming weight of authority, both in England and in this country, to be to the effect that an act lawful in itself is not converted by a malicious or bad motive into an unlawful act so as to make the doer of the act liable to a civil action.

While there were some expressions used by the judges in the English cases of *Lumley* v. *Gye,* 2 El. & Bl. 216; *Bowen* v. *Hall,* L. R. 6 Q. B. Div. 333; and *Temperton* v. *Russell* (1893), 1 Q. B. 715, which might be regarded as supporting the view that malice was of the gist of the action; yet each of those cases was

one where the defendant had been guilty of an unlawful act in procuring the breach of a contract actually made and in force with the plaintiff. But those portions of the opinions in the above cited cases which held that malice and evil intent was the gist of the action were expressly disapproved as erroneous in *Allen* v. *Flood* (1898), A. C. 1. And the proposition laid down in *Allen* v. *Flood*, that the exercise of an absolutely legal right can not be treated as wrongful merely because a malicious intention prompted such exercise was acquiesced in by all of the law lords who wrote opinions in *Quinn* v. *Leathem* (1901), A. C. 495.

It may be taken, then, to be the settled law of England, as laid down in the case of *Allen* v. *Flood* (1898), A. C. 1, by Lord Watson, at p. 92: "Although the rule may be otherwise with regard to crimes, the law of England does not, according to my apprehension, take into account motive as constituting an element of civil wrong. Any invasion of the civil rights of another person is in itself a legal wrong, carrying with it liability to repair its necessary or natural consequences, in so far as these are injurious to the person whose right is infringed, whether the motive which prompted it be good, bad or indifferent. But the existence of a bad motive, in the case of an act which is not in itself illegal, will not convert that act into a civil wrong for which reparation is due. A wrongful act, done knowingly and with a view to its injurious consequences, may, in the sense of law, be malicious; but such malice derives its essential character from the circumstance that the act done constitutes a violation of the law." And the same general doctrine has been followed in numerous cases in this country: See *Perrault* v. *Gauthier*, 28 Can. Sup. Ct. 241; *Boyson* v. *Thorn*, 98 Cal. 578; *McCune* v. *Norwich City Gas Co.*, 30 Conn. 524; *Kelley* v. *Chicago, etc.*, 93 Iowa, 452; *Chambers* v. *Baldwin*, 91 Ky. 121; *Bourlier* v. *Macauley*, 91 Ky. 135; *Perkins* v. *Pendleton*, 90 Me. 166; *Heywood* v. *Tillson*, 75 Me. 225; *Bohn Mfg. Co.* v. *Hollis*, 54 Minn. 223; *Hunt* v. *Simonds*, 19 Mo. 583; *Glencoe, etc.*, v. *Hudson, etc.*, 138 Mo. 439; *Prickard* v. *Collins*, 23 Barb. (N. Y), 459; *Jenkins* v. *Fowler*, 24 Pa. St. 308; *Glendon Iron Co* v. *Uhler*, 75 Pa. St.

467; *Smith* v. *Johnson*, 76 Pa. St. 191; *Wilson* v. *Berg*, 88 Pa. St. 172; *Lancaster* v. *Hamburger*, 70 Ohio St. 156.

(3)    We conclude, therefore, in view of the general doctrine laid down in the above cases, that, inasmuch as there is no proof of any illegal act on the part of the defendant, it is of no consequence that it might be made to appear that the defendant was actuated by malicious motives in what he did as inspector. The evidence of any actual malice on the part of the defendant is of so slight a character that it seems rather, upon a consideration of the whole evidence, to be a case where, through some slight misunderstandings between the parties, and occasional loss of temper, the plaintiff had gotten himself into a state of mind where he was willing and anxious to believe that the defendant was actuated by personal malice towards him, rather than by a sense of his duty as inspector. But however unpleasant may have been the feelings of the parties toward each other, there is no evidence that the defendant went beyond his strict duty so far as enforcing the rules of inspection of the plaintiff's work was concerned; and so there can be no malice implied in this case, as it might have been had acts of a strictly illegal character been proved.

Upon the whole evidence, we are of the opinion that no cause of action has been shown, and therefore a consideration of the specific exceptions alleged by the defendant becomes unnecessary.

The plaintiff is to show cause, on March 7th, 1910, at 10 A. M., why judgment should not be entered for the defendant.

*James A. Williams, Amasa M. Eaton,* for plaintiff.
*Vincent, Boss, and Barnefield,* for defendant.