GIBBONS, Respondent, vs. GRINSEL, Appellant.

*February 4 — April 9, 1891.*

*Contract of subscription: Corporation.*

1. A written contract, signed by D. & R. as parties of the first part, and by forty other persons as parties of the second part, whereby D. & R. agree with the latter to erect a creamery of wood, according to certain specifications, and furnish certain fixtures, etc., for $6,000, and the latter parties agree in the following terms: "We, the subscribers hereto, parties of the second part, agree to pay the above price" to D. & R. "As soon as above amount of $6,000 is subscribed, or in reasonable time thereafter, said subscribers may incorporate under the laws of this state,— and shall issue stock to the above mentioned subscribers, to the amount of their paid-up interest in said organization. For the faithful performance of our respective parts in the above contract we bind ourselves, our heirs, executors and administrators," *held* to create a several liability on the part of each of the subscribers to the amount set down by him opposite his name, on which he might be sued severally by D. & R. or their assignee.

2. The subsequent modification of such contract, so that the building should be constructed of brick and iron, made by an agreement entered into by a majority in number and amount of the subscribers and D. & R., without the knowledge or consent of the defendant, but without increasing his liability, did not release him from liability on his original subscription.

3. The expenditure of money and incurring of obligations by D. & R. on the faith of the subscription, is a sufficient consideration for the promise of the subscribers.

4. The fact that, after the whole amount had been subscribed, the association was incorporated with a larger amount of capital, and a greater number of shares, but less in amount, than originally contemplated, does not injure the defendant, and in no way affects his liability on his subscription.

APPEAL from the Circuit Court for *Eau Claire* County.

It appears from the record that, July 28, 1888, Davis & Rankin, as parties of the first part, entered into a written agreement with the parties of the second part, to the effect that they would furnish the ground, put into operation

thereon a creamery, described, at or near Eau Claire, for the sum of $6,000, payable in cash; that the other subscribers thereto, including the defendant, as parties of the second part, therein agreed to pay to them or their agent the above amount for said creamery when completed, which was to be done within sixty days; that it was provided in said agreement that as soon as said $6,000 should be subscribed thereto, or within a reasonable time thereafter, said subscribers might incorporate under the laws of this state, fixing the aggregate amount of stock at $6,000, to be divided into sixty shares at $100 each, and thereafter issue stock *to said subscribers to the amount of their paid-up interests in said organization;* that forty different parties, including the defendant, each subscribed said agreement by writing his name in a column headed, "Name of Subscriber," followed by a figure in a column headed, "No. of Shares," and that was followed by the number of dollars subscribed, in a column headed "Amt. Stock after Incor.;" that the aggregate amount of such subscription was $6,100, including the defendant's, as follows: "John Grinsel, 2 shares, $200, amount of stock after incorporation;" that thereupon twenty-one of the parties so subscribing said agreement, and representing $3,600 of said aggregate amount, agreed with the said Davis & Rankin, in writing, to modify and change said original agreement to the effect that, instead of said building being sided, it should be veneered with brick, of suitable quality, in a substantial manner, and instead of the roof being of shingles it should be of 26 standard iron, of suitable quality and workmanship, all of which was to be furnished by Davis & Rankin, and for which they agreed to pay the additional sum of $150; that thereupon, and within the time named, Davis & Rankin caused to be erected and put in operation a creamery, pursuant to the terms and agreement of said original contract as so modified, upon lots then owned and occu-

pied by Melissa Hutchinson, one of said subscribers; that August 15, 1888, Davis & Rankin transferred all their interest in said contract to the plaintiff; that September 11, 1888, the Eau Claire Creamery Association was incorporated under chs. 85, 86, R. S., without the knowledge or consent of the defendant, with a capital stock of $10,000, divided into 200 shares of $50 each; that September 13, 1888, without the knowledge or consent of the defendant, said Melissa Hutchinson, at the request of Davis & Rankin, conveyed said lots and the creamery thereon, by warranty deed duly executed, to the Eau Claire Creamery Association, aforesaid; that August 8, 1889, the said Eau Claire Creamery Association mortgaged said lots and building for the sum of $2,000; that the defendant never paid any part of said subscription; that December 12, 1889, this action was commenced in justice's court to recover the $200 so subscribed by him, and the complaint thereon was filed therein accordingly; that the answer, in addition to the general denial, alleged, in effect, that said contract was made by the defendant and the other subscribers jointly, and not otherwise, and that said subscribers were still living in said county, and were necessary parties to the action; that upon the appeal from the judgment in the justice's court to the circuit court a jury was waived, and the cause was tried by the court on a stipulation in writing to the effect that the facts were as already stated, and also to the effect that said original contract was so modified without the knowledge or consent of the defendant; that upon the facts so stipulated the court found in favor of the plaintiff and against the defendant on all the issues therein, and that the defendant was indebted to the plaintiff in the sum of $200, and entitled to judgment for that amount, with costs to be taxed; that from the judgment entered accordingly the defendant brings this appeal.

For the appellant there was a brief by *Wickham & Farr*,

and oral argument by *James Wickham*. They contended that the contract was joint and not several. 1 Parsons, Cont. 11, 13; *Ripley v. Crooker*, 47 Me. 370; *S. C.* 74 Am. Dec. 491; *Treat L. Co. v. Warner*, 60 Wis. 183. The subscribers were not bound unless the building was constructed according to the original contract, even though improved. *Smith v. Brady*, 17 N. Y. 173; *Kellogg v. Nelson*, 5 Wis. 125; *Warren v. Bean*, 6 id. 120; *Palmer v. Fogg*, 35 Me. 368; *Martis v. Houck*, 31 Mich. 439; *School Dist. v. Hayne*, 46 Wis. 511; *Davis v. Hubbard*, 41 id. 408; 2 Parsons, Cont. 675; *Pope v. Porter*, 102 N. Y. 366; *Leopold v. Salkey*, 89 Ill. 412; *Cleveland R. M. Co. v. Rhodes*, 121 U. S. 255; *Bell v. Hoffman*, 92 N. C. 273; *Malbon v. Birney*, 11 Wis. 107; *Jennings v. Lyons*, 39 id. 553; *Filley v. Pope*, 115 U. S. 213. Nor were they bound unless the property was conveyed to the subscribers. *Martin v. Veeder*, 20 Wis. 446; 3 Am. & Eng. Cyclopedia of Law, 910, 911. There was no consideration to the defendant. The corporation is not bound by the agreement of its organizers to issue stock to subscribers. *Carmody v. Powers*, 60 Mich. 26.

For the respondent the cause was submitted on the brief of *George C. Teall* and *Fred'k A. Teall*. To the point that the contract was several, and had been fully performed, they cited 1 Parsons, Cont. 11; *Weiseger v. Wheeler*, 14 Wis. 105; *Tyndall v. Conover*, 1 Spencer, 214; *S. C.* 40 Am. Dec. 220; *Davis v. Belford*, 70 Mich. 120. To the point that the corporation is bound to issue stock to the defendant when he pays for it, they cited *Eastern P. R. Co. v. Vaughn*, 14 N. Y. 546; *Poughkeepsie & S. Plank R. Co. v. Griffith*, 21 Barb. 454.

The following opinion was filed February 24, 1891:

CASSODAY, J. The facts are undisputed. 1. It is claimed that the several signers of the original agreement thereby agreed jointly, but not severally, to pay to Davis & Rankin

.the amount therein specified for the structure, and hence that this action cannot be maintained against the defendant alone. The principal case relied upon by counsel to support this proposition is *Ripley v. Crooker*, 47 Me. 370; *S. C.* 74 Am. Dec. 491. In that case the plaintiff and the four defendants were desirous of building a ship,— five sixteenths of which, when complete, were to belong to the plaintiff, and the other eleven sixteenths were to belong to the defendants,— each taking a fractional share thereof. The plaintiff agreed with the defendants to build their share (eleven sixteenths) of the entire ship, for which they agreed to pay him a certain sum. The contract was signed by all the parties, and opposite the name of each defendant was a fraction indicating the amount of his interest in the ship, but it contained no statement of any particular amount for each to pay, nor any words indicating a several liability; and the court held that the contract created a joint liability only. It is enough here to say, in reference to it, that it is distinguishable from the case at bar. So also is the case in this court cited by counsel to the same proposition. *J. A. Treat L. Co. v. Warner*, 60 Wis. 183.

"The construction of a contract is nothing more than the gathering of the intention of the parties to it from the words they have used." *Di Sora v. Phillipps*, 10 H. L. Cas. 638. In the ascertainment of the thought or purpose so expressed, regard must undoubtedly be had to the whole instrument, as applied to the facts and circumstances to which it relates. *Jacobs v. Spalding*, 71 Wis. 189. When the agreement, so considered, reveals some obvious absurdity or some repugnance or inconsistency with such manifest intention, then, to avoid such consequences, but no further, the meaning of the particular words employed may be modified, extended, or abridged.

Here the language is: " *We, the subscribers hereto*, parties of the second part, agree to pay the above amount;" and

" for a faithful and full performance of *our respective parts* of the above contract, we bind ourselves," etc.  This is followed by the name of each such subscriber, with the amount of his particular subscription; as for instance the subscription of the defendant, as mentioned in the foregoing statement.  The manifest purpose was that each such subscriber should thus pay the amount of his particular subscription, and not that he should become liable jointly with all the other subscribers for the aggregate amount of all the subscriptions.  In other words, the amount which each subscriber thus agreed to pay was limited to the amount which he thus subscribed; otherwise a few responsible subscribers might be made liable for numerous irresponsible subscribers.  These views are in harmony with the rules of law stated.  See, also, *Landwerlen v. Wheeler*, 106 Ind. 523; *Erie & N. Y. City R. Co. v. Patrick*, 2 Keyes, 256. The interest of the respective subscribers in the contract was manifestly intended to be separate, and hence the liability thereby created was severable.  1 Pars. Cont. 12–20, and notes.  This is further apparent from the fact that the subscription contemplated the formation of a stock company, in which each subscriber was to have stock of an amount commensurate with his subscription.  We must hold that the contract created a several liability on the part of the subscribers.

2. Counsel claim that the defendant was released from liability by reason of the building being completed according to the contract as modified, instead of the original. But the modification was made by the agreement of a majority in number and amount of the subscribers, who must be regarded as the representatives of the unincorporated association.  Manifestly the change improved the building. The defendant is not called upon for any portion of the additional expense by reason of the change.  The agreement contemplated the completion of the building within

sixty days, and it was completed within the time. True, such modification of the agreement was without the knowledge or consent of the defendant, but the nature of the change was such that it must have been apparent to the citizens generally, and yet it does not appear that he made any objection. The case is not to be regarded the same as though the building was constructed for the defendant alone. He, in common with the other subscribers, was interested in having the creamery constructed; and he must be regarded as having acquiesced in the change effected by the majority for his good as well as the good of the other subscribers.

3. Counsel claim that there was no consideration to support the promise. It is well settled that any benefit or advantage to the party making the promise, or any inconvenience or damage sustained by the party to whom the promise is made, is a sufficient consideration to support a promise to pay. There are authorities going to the extent of holding that, where several persons subscribe, or agree to contribute, to a common object, the promise of each is a good consideration for that of the others. But we need not go to that extent in this case, since all the authorities agree that where, as here, the persons to whom the subscriptions run have expended money or incurred obligations on the faith of such subscriptions, it is a sufficient consideration to support the promise therein to pay. *Eycleshimer v. Van Antwerp*, 13 Wis. 546; *Lathrop v. Knapp*, 27 Wis. 214; *La Fayette Co. M. Corp. v. Magoon*, 73 Wis. 627; *Troy Conference Academy v. Nelson*, 24 Vt. 189; *Barnes v. Perine*, 12 N. Y. 18; *Pitt v. Gentle*, 49 Mo. 74; *Homan v. Steele*, 18 Neb. 652.

4. Counsel claim that the defendant was released from liability by reason of the association being incorporated with a larger amount of capital stock, and a larger number of shares, and a less amount for each share, than contem-

plated in the agreement. But all that took place after the defendant's liability had been incurred and Davis & Rankin had transferred their interest in the contract to the plaintiff. Besides, that part of the agreement relating to such incorporation was solely for the benefit of the subscribers, and in no way affected their liability to Davis & Rankin, or their assignee; and hence a departure therefrom is not available as a defense.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied April 9, 1891.