DAVIS & RANKIN BUILDING & MANUFACTURING COMPANY, Appellant, vs. CUPP and others, Respondents.

*February 11 — March 5, 1895.*

(1, 2) *Appeal: Record: Bill of exceptions: Presumption.* (3, 4) *Contract; joint or several? Subscriptions: Payment: Mechanic's lien.*

1. The record returned to this court in this case is criticised as violating nearly, if not quite, all the requirements of the statute and the rules of the court; and it is stated that Rule VII ½ must hereafter be observed.

2. In the absence of a statement that the bill of exceptions contains all the evidence it will be presumed that all the findings were justified by the evidence.

3. Plaintiff made a written contract, agreeing to build for the subscribers thereto, as party of the second part, a butter factory for $3,750, it being stipulated on their part that "we, the subscribers hereto, agree to pay the above amount for said butter factory when completed. . . . As soon as the above amount is subscribed . . . the said subscribers may incorporate" with a capital stock not less than the amount subscribed, and divided into shares of $100 each, said shares "to be issued to the subscribers hereto in proportion to their paid-up interest herein. And it is herein agreed that each stockholder shall be liable only for the amount subscribed by him." The subscriptions were in amounts from $50 to $200, opposite each name being stated the "number of

VOL. 89 — 43

shares" and "amount of stock after incorporation." *Held,* that the contract was a several one with each subscriber, by which he became liable only for the amount of his subscription.

4. Although some of the supposed subscriptions on such contract, necessary to make up the amount of $3,750, were never in fact made so as to be binding, if all of the valid subscriptions were paid to the plaintiff nothing remained due on the contract and plaintiff could not have a lien on the building for any balance.

APPEAL from a judgment of the circuit court for Richland county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

This is an action to foreclose a mechanic's lien. The plaintiff claims a lien amounting to $1,700 upon a butter factory building, being the balance which it claims to be due as a part of the contract price for the erection of said building. The contract under which the building is alleged to have been built purported to be a contract made with thirty-six different subscribers, and in this action all of said subscribers were made defendants. The contract was a printed one, dated October 25, 1892, and was quite long. It provided, in substance, that the plaintiff, party of the first part, agreed with the subscribers thereto, party of the second part, to build and equip a butter factory, to be located on land furnished by the subscribers. After fully describing the character of the building and giving specifications for the building and machinery to be put into it, the contract proceeds as follows: "The *Davis & Rankin Building & Manufacturing Company* agrees to erect said butter factory, as set forth by the above specifications, for $3,750.00, payable in cash when factory is completed. We, the subscribers hereto, agree to pay the above amount for said butter factory when completed. Said building to be completed within sixty days or thereabout after the above amount ($3,750.00) is subscribed. Any portion of the amount subscribed, not paid according to contract, shall bear legal rate of interest. As soon as the above amount ($3,750.00) is subscribed, or in a reasonable time thereafter, the said subscrib-

ers may incorporate under the laws of the state, as therein provided, fixing the aggregate amount of stock at not less than the amount subscribed, to be divided into shares of $100 each; said share or shares, as above stated, to be issued to the subscribers hereto in proportion to their paid-up interest herein. And it is herein agreed that each stockholder shall be liable only for the amount subscribed by him."

The contract was signed by the plaintiff, acting through its agents, and upon a separate sheet were the names of the subscribers, in manner following:

| Names of Subscribers. | No. of Shares. | Amount Stock after Incorporation. |
|---|---|---|
| H. N. Cupp.............................. | 1 | $100. |

Following *Mr. Cupp's* signature are the names of thirty-five other subscribers, the aggregate of their subscriptions amounting to $3,750; all of said subscriptions except four being in the sum of $100, three being in the sum of $200, and one being in the sum of $50. It appears that a number of the defendants, whose subscriptions aggregate $2,050, have paid their subscriptions to the party of the first part, and this action is brought to establish a lien for the $1,700 still remaining apparently due upon the contract.

A part of the defendants answered denying that they ever signed the contract; another part answered alleging that they signed a piece of blank paper under the fraudulent representation that it was a mere call for a meeting to consider the subject of the erection of a butter factory, and that their names have been fraudulently attached to the contract without their consent.

After the trial the circuit court made findings substantially in accordance with the allegations of the answers of the defendants, and concluded that the plaintiff was not entitled to any lien, and from a judgment for the defendants the plaintiff appeals.

For the appellant there was a brief by *George C. & Fred*

*A. Teall*, attorneys, and *Eastland & Son*, of counsel, and oral argument by *Fred A. Teall*. They contended, *inter alia*, that the contract was a joint undertaking of the subscribers. *Davis & R. B. & M. Co. v. Shafer*, 50 Fed. Rep. 764. Even if it be held a several contract, it is still joint so far as to entitle the plaintiff to enforce a lien upon the specific property in a joint action against all the subscribers. *Davis & R. B. & M. Co. v. Knoke*, 55 Minn. 368.

For the respondents there was a brief by *F. W. Burnham* and *O. F. Black*, and oral argument by *Mr. Burnham*.

Winslow, J. Upon examining the supposed record in this case we find that it consists of four packages of fugitive papers, which have been returned to this court under the mistaken idea that they constitute a proper return upon the appeal. These detached bundles of paper are made up without regard to order, and are returned here in violation of nearly, if not quite, all the requirements of the statute and the rules of the court. Three of these packages have no certificate of the clerk of the court attached to them, and thus lack the identification necessary to entitle them to a recognition in this court. R. S. sec. 3050; *Webster v. Stadden*, 8 Wis. 225. One of these packages seems to contain the summons and complaint, the return of service, and the answers of the defendants; another seems to contain the deposition of certain witnesses taken in Chicago, and the stipulation under which they were taken; and the third seems to be an incomplete bill of exceptions. In this supposed bill of exceptions there is no statement or certificate that it contains all of the evidence, and no certificate of settlement by the circuit judge, and the only thing which justifies the suspicion that it is a bill of exceptions at all is a stipulation, signed by the plaintiff's attorneys and by the attorneys of all save one of the defendants, to the effect that it shall stand as the bill of exceptions in the case. The fourth package consists of

several subpoenas, the clerk's fee bill, and the bill of costs, the notice and undertaking on appeal, the findings and exceptions thereto, and the judgment. This last package is the only one identified by the certificate of the clerk, and consequently is the only record or return which is before the court. There may be other irregularities which, from lack of time, we have not noticed, but from this statement it certainly appears, we think, that it would have required great industry and ability to have made the record more imperfect than it is.

We have called attention to the condition of this record, because it sharply illustrates a difficulty which this court constantly meets. Records are frequently sent here consisting of chaotic masses of papers in detached parcels, thus entailing a large amount of unnecessary work on this court whenever it becomes essential, as it frequently does, to consult the original record. The present condition of the business of this court imperatively requires that no such unnecessary expenditure of time and labor should be demanded of it. The new rule adopted September 4, 1894, and printed as No. VII½ in the new edition of the rules of this court (87 Wis. v.), will entirely obviate this difficulty, if it be observed, and it may be stated now that it is the intention of the court to see that this rule is observed in the future.

Irrespective of all rules, however, the supposed return in this case is entirely indefensible, and we have had serious doubts whether we should not dismiss this appeal at once on account of the failure to make the return as directed by the law; but, inasmuch as the merits of the case have been fully argued without objection, we have concluded to examine the case so far as to determine whether the pleadings and the findings support the judgment. We can go no further than this; the supposed bill of exceptions can cut no figure. Not only is it entirely without authentication, but, even if it were authenticated, there is no certificate of settle-

Davis & Rankin Bldg. & Mfg. Co. vs. Cupp and others.

ment by the circuit judge, and even if such certificate could be supplied by the stipulation, still there is no statement that it contains all the evidence, and in the absence of such a statement we must presume that all the findings of fact were justified by the evidence.

So we come simply to the consideration of the question whether the pleadings and findings justify the judgment. On this there can be little doubt. We construe the building contract to be a several contract with each subscriber to the amount of his subscription, and not as a joint contract by which each subscriber would become liable for the whole consideration. Though not in the same language, the purport of the contract is much the same as the one construed in *Gibbons v. Grinsel,* 79 Wis. 365, and which was held to be a several contract. A contract in the identical language of the one before us was construed by the supreme court of Michigan to be several and not joint. *Davis & R. B. & M. Co. v. Murray,* 60 N. W. Rep. 437. Such was the conclusion reached by the federal court in the case of *Davis & R. B. & M. Co. v. Barber,* 51 Fed. Rep. 148.

The plaintiff claims a lien for a balance alleged to be due upon the building contract. Plainly, if there is nothing due on this contract there is no lien. The court found, and it is a verity in the case, that those who had not paid their supposed subscriptions either never signed the contract at all or signed a piece of blank paper under fraudulent representations and thus never became parties to it. All the remaining subscribers have paid their subscriptions, and, the liability of the subscribers being several, it necessarily follows that the building contract has been fully paid, that there is no balance due, and consequently that there can be no lien.

*By the Court.*— Judgment affirmed.

On the question whether a subscription contract is joint or several, see note to *Gibbons v. Bente* (51 Minn. 499), in 22 L. R. A. 80.— REP.