**D. McArthur** *et al.,* Appellants, v. **W. H. Board** *et al.,* Appellees.

**Contracts:** JOINT OR SEVERAL LIABILITY: VOLUNTARY PAYMENT: CONTRIBUTION. A contract for the sale of a stallion provided "the undersigned subscribers, who, wishing to improve their stock, agree to pay McLaughlin Bros. $100 for each share of stock in said stallion. Capital stock $3,000. Number of shares 30," *held* to be a several contract, and subscribers who voluntarily paid the shares of others in default could not recover from them the amounts so paid.

*Appeal from Cerro Gordo District Court.*—Hon. Clifford P. Smith, Judge.

Tuesday, February 10, 1903.

*Cliggitt, Rule & Keeler* for appellants.

*Glass, McConlogue & Witwer* for appellees.

Weaver, J.—The plaintiffs' petition states a case in substance as follows: On the 28th of September, 1898, the plaintiffs and defendants, with others (thirty in all), entered into a written contract with McLaughlin Brothers for the purchase of a stallion, said contract being in the following words: "Mason City, Iowa, September 24, 1898. Name of Stallion, Reseda, No. 2,074. McLaughlin Bros. agree to sell the above-named stallion for $3,000.00 to the undersigned subscribers, who, wishing to improve their stock, agree to pay McLaughlin Bros. $100.00 for each share in said stallion. Capital Stock, $3,000.00. No. shares, 30. Payments to be made cash, or one-third in one year, one-third in two years, and one-third in three years after July 1, 1899, secured by joint and several notes, with interest." Signed by McLaughlin Bros. and

each of the purchasers above mentioned. On July 1, 1900, an installment of the purchase price of the stallion being due and payable, and defendants having failed to pay their share thereof, the plaintiffs paid the same, and now ask judgment against the defendants for the amount thus expended. To this petition, which was entitled in equity, a general demurrer was sustained, and, plaintiffs electing to stand upon their pleadings, judgment was rendered against them for costs, and they appeal.

The one question presented by this record is whether the thirty purchasers, in signing the contract, became jointly and severally liable for the entire purchase price, or whether their liability is several only, each being bound to pay the amount of one "share," or $100, and no more. The rule seems to be well established that, where several persons unite in the same covenant or undertaking without words indicating a severance of liability, they are jointly bound. Parsons, Contracts, (6th Ed.) 11; 1 Addison, Contracts, section 48; 1 Story, Contracts, section 33. The thing to be determined is the intent of the parties, and if, when read as a whole, with reference to the subject matter and the occupations of the parties it is reasonably clear that only a limited or several obligation was intended to be assumed by each individual obligor, the courts will recognize and give force and effect to such intention. *Des Moines Cotton Mills Co. v. York Inv. Co.*, 92 Iowa, 396; *Landwerlen v. Wheeler*, 106 Ind. 523 (5 N. E. Rep. 888); *Ernst v. Bartle*, 1 Johns. Cas. 319; *Cornish v. West*, 82 Minn. 107 (84 N. W. Rep. 750, 52 L. R. A. 355); *Scraper Co. v. Locklin*, 100 Mich. 339 (58 N. W. Rep. 1117); *Gibbons v. Bente*, 51 Minn. 499 (53 N. W. Rep. 756 22 L. R. A. 80); *Gibbons v. Grinsel*, 79 Wis. 365 (48 N. W. Rep. 255); *Frost v. Williams*, 2 S. D. 457 (50 N. W. Rep. 964; Bishop, Contracts, sections 382, 575; Beach, Contracts, sections 671, 674. This construction will often be given to contracts even where a literal interpretation of the words

employed would se :m to import a joint obligation. *Ernst v. Bartle, supra*; *Landwerlen v. Wheeler, supra*; *Frost v. Williams, supra.* "When parties engage in the perform-ance of distinct and several duties, mere words of plur-ality, as, 'We bind ourselves,' will not make the contract joint." Addison, Contracts (Morgan's Ed.) 86.

Individual cases depend so much upon the peculiar wording of the contracts under consideration and the peculiar circumstances and relations of the parties, that they are of limited value as precedents, and we think it unnecessary to go into any extended review of those which have been cited in argument. They are all in harmony with the proposition we have above stated that the inten-tion of the parties, if it can be gathered from the language employed and the circumstances indicated by the contract as a whole, must be our guide in determining the extent of the liability thereby incurred. The language in the contract in suit is by no means as clear and explicit as could be desired, but it is not so obscure as to be unintell-igible, especially when viewed with reference to the sub-ject of the purchase, the relations of the parties, and the apparent purpose sought to be effected. We have, then, upon the one hand, a dealer with a horse of such character and value as to render it unsuitable for the individual ownership and use of the average farmer or stock raiser, yet one whose value to the neighborhood generally may be sufficient to justify a company of farmers or stock raisers in uniting to secure its purchase. On the other hand are thirty persons interested in the improvement of their stock of horses, who are each willing to take a "share" in such enterprise. When, therefore, the dealer, adapting himself to the situation, agrees to sell "for $3,000 to the undersigned subscribers, who, wishing to improve their stock, agree to pay $100 for each share in said stallion. Capital stock, $3,000. No. shares, 30,"—we think that by no fair construction can such language be made to

indicate the assumption of a joint obligation by the pur chasers. On no other reasonable hypothesis can the reference to "capital stock," "subscribers," "shares," and price per share be explained. It is a settled rule of construction that, if possible, every word and phrase of a contract shall be given its appropriate meaning and effect. *Hollingsworth v. Fry*, Fed. Cas. No. 6,619; *Emerick v. Clemens*, 26 Iowa, 332; *Metcalf v. Taylor*, 36 Me. 28; *Randel v. Canal Co.*, 1 Har. 151. And this can be done in the present instance by construing the contract as one for the purchase of shares by the individual subscribers. The cases of *Frost v. Williams*, *Gibbons v. Bente*, and others above cited, are quite in point. In some of them the language seeming to import a joint obligation is much stronger than in the case at bar, but the agreement as a whole was construed as being several and limited. In opposition to this line of cases *Davis v. Shafer* (C. C.) 50 Fed. Rep. 764, appears to stand alone, and has since been disapproved in *Manufacturing Co. v. Barber* (C. C.) 51 Fed. Rep. 148.

It is difficult to believe that each of the parties subscribing to the purchase of these shares believed or understood that he was taking upon himself the legal liability to pay the entire $3,000; or, in other words, that he was promising not only to pay for his own share, but also to stand responsible for the shares of all the other twenty-nine subscribers. The instrument was so framed that he could reasonably and fairly construe it as binding him to no more than the purchase of a single share, and to that extent only should be held liable. In the case of *Ripley v. Crocker*, 47 Me. 370 (74 Am. Dec. 491), relied upon by appellants, several persons united in a contract with a ship-builder for the building of a vessel, agreeing to pay a specified price therefor. There was nothing whatever in the language of the agreement indicating any severance of liability on part of the purchasers, but they sought to

escape joint liability because in signing the instrument each one affixed to his signature the word "one-eighth" or other similar phrase indicating, presumably, the fractional part of the vessel he expected to own when the work was completed. These facts render the case readily distinguishable from the one before us, and the same may be said with greater or less force of the other decisions to which we have been cited by appellants.

It follows that there was no error in sustaining the demurrer to the petition, and the judgment of the district court is AFFIRMED.