CITY DEPOSIT BANK, OF COLUMBUS, OHIO, Appellant, v. SAMUEL T. GREEN, ET AL., Appellees.

**Evidence:** VARYING A WRITING. In a suit on a joint and several
1 promissory note containing no ambiguity, neither parol evidence, nor a prior contract not a part of the same transaction, providing for the giving of the note are admissible for the purpose of explaining the liability of the makers.

**Negotiable instruments:** BONA FIDE HOLDER. A bank which discounts a note for a dispositor, simply giving him credit for the
2 proceeds in his account, is not a *bona fide* holder so long as the credit exists; but if the depositor was indebted to the bank at the time in an amount equal to the proceeds, or withdrew the deposit before maturity of the note and notice to the bank of any infirmity therein, it would then become a *bona fide* holder.

**Same:** BURDEN OF PROOF. In the absence of fraud in the execution
3 of a note, the burden is upon the maker to show that the holder is not a *bona fide* purchaser.

*Appeal from Calhoun District Court.*— HON. F. M. POWERS, Judge.

MONDAY, APRIL 9, 1906.

ACTION upon defendants' joint and several promissory note for the sum of $1,000. Verdict for plaintiff in the sum of $730.30, interest, and costs. From a judgment on the verdict, plaintiff appeals.— *Reversed.*

*J. M. Toliver* and *M. R. McCrary,* for appellant.

*Hutchinson & Jacobs,* for appellees.

DEEMER, J.— The note in suit which was given to McLaughlin Bros., is negotiable in form, and was signed by each of the defendants, thirteen in number. Thereby defendants jointly and severally promised to pay to the payees

or bearer, $1,000, two years after date, with interest at the rate of 6 per cent. This note with others was given in performance of a contract for the purchase of a stallion by these defendants from McLaughlin Bros., the material parts of which contract read as follows: " McLaughlin Bros. agree to sell the above-named stallion for $3,000.00 to the undersigned subscribers, who wishing to improve their stock agree to pay McLaughlin Bros. $200.00 for each share in said stallion. Capital stock, $3,000." No. of shares, 15. Payments to be made in cash, or one-third in two years, one-third in three years, one-third in four years after July 1, 1901, secured by joint and several notes with interest." Other provisions of the contract will be found in *McArthur v. Board,* 119 Iowa, 562, to which reference is made. When time arrived for performance defendants did not pay cash, but instead made the note upon which suit is brought with others, according to the terms of the contract. To this action on the note defendants pleaded that they were severally and not jointly liable, and that the note was obtained through fraud. They further pleaded that plaintiff was not a good-faith holder of the note.

To establish their claim that they were severally and not jointly liable, they introduced the contract for the purchase of the stallion, and some parol testimony, claiming that these
1. Evidence: varying a writing. matters should be taken into account in ascertaining the extent of their liability on the note. If the action were upon the contract there would be no doubt of the soundness of defendant's contention. McArthur v. Board, *supra.* The action is not upon that instrument however, but upon one of the notes executed in performance thereof. There is no ambiguity in the note, and it is expressly provided in the contract, that if payment is not made in cash, the purchase price shall be secured by joint and several notes with interest. Defendants were obligated in the event they did not pay in cash to secure the purchase price by joint and several notes. There is no ambiguity in this

expression unless it be found in the use of the term "notes." That is to say should there be fifteen or more joint and several notes, or three, due respectively in two, three, and four years. In any event defendants were to be jointly and severally bound, and it is largely immaterial we think which construction should be put upon this contract for the parties have given it their own construction, and have executed three joint and several notes each for the sum of $1,000, representing the purchase price of the animal. Having placed their own construction upon the contract we need not speculate on the proper interpretation thereof. The notes and the contract were not executed at one and the same time and as a part of the same transaction; for the notes were given in fulfillment of the contract obligation, and in performance of the promise therein made. After the execution of the notes the contract became *functus officio;* and as there is no ambiguity in the note there is no occasion so far as this issue is concerned to refer to the contract for any explanation thereof.

Defendants' attempt to ingraft conditions and limitations upon their absolute liability on the note clearly offends against the rule forbidding the introduction of extrinsic or parol evidence to vary, change, or modify the terms of a promissory note. Were there doubt or ambiguity on the face of the note, or had the contract been executed at the same time as the note and as a part of the same transaction, we might refer back to the contract and perhaps receive oral testimony for light whereby to solve the difficulty; but that is not the situation here. There was ample consideration for the notes in any event; and the question reduced to its last analysis is: May parol or extrinsic evidence be received to contradict change or vary the terms thereof? Under the peculiar circumstances of this case we think such testimony was inadmissible save on the issue of fraud; and that the trial court was in error in admitting the same.

It was also in error in instructing that, if plaintiff was

not an innocent holder, defendants were each liable for no more than their respective shares, to wit, eleven-fifteenths of the amount called for by the note, two of the defendants having made default, or not being in the case.   As support-ing our conclusions on this branch of the case, see *De Long v. Lee,* 73 Iowa, 54; *Farmers' Bank v. Wilka,* 102 Iowa, 315; *Dickson v. Harris,* 60 Iowa, 730; *Courtwright v. Stick-ler,* 37 Iowa, 386; *Mason v. Mason,* 72 Iowa, 459.

II. The fraud issue was not submitted to the jury, and is not involved on this appeal; but the court instructed as to who would be considered a *bona fide* purchaser of negotia-ble paper, saying in one of its instructions, in effect, that if a bank discounts paper for one of its depositors, giving him credit therefor upon its books for the proceeds, it is not a *bona fide* holder, unless some other and valuable consideration passes.   Fur-ther it instructed that such a transaction simply created the relation of debtor and creditor and so long as that relation continued, and the deposit is not drawn the bank is not an innocent holder, even though it took the paper before ma-turity and without notice.   Taken abstractly, these instruc-tions, in so far as they attempted to cover the case, announced a correct rule of law.   *Mfrs. Bank v. Newell,* 71 Wis. 309 (37 N. W. 420); *Drovers' Bank v. Blue,* 110 Mich. 31 (67 N. W. 1105, 64 Am. St. Rep. 327); *First Bank v. Mt. Pleasant Milling Co.,* 103 Iowa, 518 (72 N. W. 689).   But as applied to the facts of this case the instruction was likely to be misleading, and should have been amplified with ref-erence to these facts.   The testimony upon this subject all came from plaintiff's witnesses, and it is a little difficult to understand the transaction.   They, or some of them, say that they paid in cash, $1,075.17 for the note.   Whether they did or not was a question for a jury, and this was properly submitted.   But there was also testimony tending to show that they discounted a lot of notes belonging to McLaughlin Bros., amounting to over $20,000, when they obtained the

2. Negotiable instruments: bona fide holder.

note in suit, and that the firm was at that time owing the
bank an overdraft of something more than $1,700, that it
drew out on the day the bank received the notes something
over $600, and that the firm also had a debit account of $40,-
000 on that day, which was afterwards increased until it
amounted to $57,000. Plaintiff says that no arrangement
about the indebtedness was made when the notes were dis-
counted; that McLaughlin Bros. wanted some ready money,
and that it paid them cash for the notes. Plaintiff's books
show a credit entry of $20,233.39 of date April 4, 1903, the
day it claims to have purchased the notes, and a debit entry
on that day of $601.23. There is no showing as to what
was done on subsequent days save testimony to the effect that
the debit account grew larger and amounted to over $57,000
at the time the testimony was taken.

As the defense of fraud was not submitted, the burden
was upon defendants to show that plaintiff was not an in-
nocent holder. *Freillenberg v. Rubel,* 123 Iowa, 154. If
3. SAME: burden the bank allowed McLaughlin Bros. to check
of proof.    out more than these discounted notes amounted
to before the maturity of the note, and before receiv-
ing notice of an infirmity in the note or if the firm was
indebted to the bank in a sum greater or as great as the
amount of the credit, which was then due, then under the au-
thorities it became a *bona fide* holder. *Warman v. Bank,*
185 Ill. 60 (57 N. E. 6, 49 L. R. A. 412); *Fox v. Bank,* 30
Kan. 441 (1 Pac. 789); *Crosby v. Grant,* 36 N. H. 273;
*Drilling v. Bank,* 43 Kan. Sup. 197 (23 Pac. 94). If there
was no showing as to the status of McLaughlin Bros.' account
after the discounting of the notes we should be inclined to
hold that the burden was upon plaintiff to show that this
credit appearing upon the books of date April 4, 1903, was
exhausted before the maturity of the note in suit, or that it
held overdue paper upon which it might properly apply the
same. The record is in a confused state on this proposition,
and it is enough to say that the trial court did not properly

instruct upon the question of what constitutes one a good-faith holder of negotiable paper under the facts disclosed by this record.    The major part of the instruction seems to have been copied from volume 4, Am. & Eng. Ency. of Law (2d Ed.) page 298, but a very material part was omitted, to wit, the words, " who is not in its debt."

For the errors pointed out the judgment must be, and it is, reversed.