H. M. SHIVELY, Trustee, Appellee, v. GLOBE MANUFACTURING COMPANY et al., Appellants.

MAY 8, 1928.

*George J. Dugan, Hatter & Harned,* and *Parsons & Mills,* for appellants.

*Harry Wifvat, Parrish, Cohen, Guthrie, Watters & Halloran,* and *R. K. Craft,* for appellee.

FAVILLE, J.—The Globe Manufacturing Company was a corporation engaged in the manufacture of washing machines at Perry, Iowa. It became heavily involved. The exact amount of its indebtedness does not clearly appear in the record. In April, 1922, said corporation was adjudged a bankrupt, and it appears that approximately $175,000 of claims were filed against it in the bankruptcy court. In December, 1922, the bankrupt made an offer of composition of its indebtedness, on the basis of

the payment of 20 per cent of the claims of creditors. On January 19, 1923, an order was entered in the bankruptcy court, approving of said composition. Among the claimants were five banks, interveners herein, which at said time held claims against the bankrupt aggregating the principal sum of more than $33,000. None of said claims were secured. Negotiations were entered into between representatives of said banks and B. C. Dilenbeck and S. S. Dilenbeck, who were the sole stockholders in said bankrupt corporation. A plan was finally arranged between all of said parties to issue bonds of the said company in the sum of $75,000, to be purchased by the banks, the proceeds of which were to be used for the purpose of paying the said 20 per cent to the creditors of said company, and the banks were to retain the said bonds, or the proceeds thereof, if sold, to satisfy the balance of their claims against the bankrupt, and pay the balance to the company. This arrangement was reduced to a written contract between the parties. Said contract provided that it was conditioned upon the settlement with the creditors of said corporation upon a 20 per cent basis of their claims; and in the event that this was done, the said S. S. Dilenbeck agreed to transfer the title to certain real estate to the said manufacturing company, and the banks were to pay him the sum of $2,750. This contract also provided that the banks were to accept settlement of their claims against the corporation on the basis of 20 per cent of their claims; and in consideration of the purchase of the bonds and advancing the necessary sum for settlement with the creditors upon a 20 per cent basis, and upon other valuable consideration, each of the banks "shall receive as their own property a portion of said bond issue equaling 80 per cent of their respective claim," this to be in addition to the 20 per cent composition settlement. This contract also provided for the guaranty of the payment of said bonds by said S. S. Dilenbeck to the amount of $37,500, and by B. C. Dilenbeck for the full amount thereof.

Pursuant to this contract, the trust mortgage and bonds were issued, and the contracts of guaranty were duly executed. It also appears from the record that the banks advanced the necessary money to pay the 20 per cent agreed upon in the composition settlement with the various claimants of the said bankrupt, including said banks, and also that all of the banks except

one paid the amount required under said contract. The scheme, however, did not work out in such a way as to rehabilitate the corporation successfully. For about three years, the corporation paid the interest on said bonds, but finally defaulted thereon; and this action was brought to foreclose the trust mortgage and for personal judgment against the guarantors on said contracts of guaranty.

I. We first consider the question of the individual liability of the Dilenbecks under their contracts of guaranty. Briefly stated, appellants' contention at this point is, in substance, that  the banks did not perform the contract in question on their part, and hence the appellants are not liable on their contracts of guaranty therein. Estoppel and waiver are pleaded against the claim of appellants. Appellants' contention is that the contract by which the banks agreed to purchase the bonds was a joint and several obligation, and that each bank a party thereto was liable for full performance of the agreement, and that a default on the part of one of the banks operated to discharge appellants under their contracts of guaranty. It is contended that the contract is joint, and not several, and that one bank, a party thereto, failed to pay its quota, as provided in the contract, and that the other banks failed to make up the amount so in default, and hence the guarantors are discharged under their separate contracts of guaranty. The bankrupt corporation was owing the five banks involved various sums, ranging from $1,000 to $10,585. Included among the banks was the First National of Perry, to which the corporation was indebted in the sum of $6,493; and the appellants' contention is that said bank failed to pay its proportionate share of the bonds, or to furnish cash under said agreement, and that the other banks failed to do so. In the contract, the five banks are described as "parties of the first part," and the contract recites:

"It is therefore agreed between the parties hereto that the first parties will purchase a bond issue of seventy-five thousand dollars ($75,000.00) to be issued by the Globe Manufacturing Company, the same to be secured by a first mortgage upon all the property of the Globe Manufacturing Company."

The contract further provides that, if a settlement is made with the creditors of the corporation on a 20 per cent basis,

"then the first parties will advance within sixty days from the time said agreements of the creditors are secured the funds necessary for the payment of the claims of all the creditors on the said twenty per cent basis, which said payment, advanced in cash to the creditors, will be in full settlement of their demands and claims against the Globe Manufacturing Company and B. C. Dilenbeck."

It is further provided that, in consideration of the purchase of the bonds and the advancement of the necessary funds for the settlement with the creditors:

"It is agreed that each of the parties of the first part shall receive as their own property a portion of said bond issue, hereinbefore referred to, equaling eighty per cent of their respective claims against the Globe Manufacturing Company, the same to be in addition to the twenty per cent payment in cash hereinbefore mentioned."

The concluding paragraph of the contract is as follows:

"After the first parties shall have paid the creditors as hereinbefore stipulated, and shall have paid S. S. Dilenbeck, as provided herein, and the expenses of preparing and carrying out this agreement, the balance due on the purchase of said bonds shall be paid to the Globe Manufacturing Company by the first parties upon a pro-rata basis according to the amount now owing to the first parties by the Globe Manufacturing Company."

We must construe this contract in the light of all the circumstances surrounding the parties at the time, and also in view of their purpose and intention, and also the practical construction of the same by the parties.

The claims of the five banks were very different in amounts, and there is nothing in the contract specifically indicating that any one or more banks was to be liable for the purchase of the entire issue of bonds. Under the circumstances, it is clearly apparent that such was not the evident intention of the parties. The concluding portion of the contract, supra, clearly negatives the idea that the banks were severally liable for the full amount of the purchase price of the bonds. It is scarcely conceivable that the parties contemplated that one bank with a claim of only $1,000 should be liable for the purchase of the entire bond issue of $75,000; yet such is the effect of appellants' contention. The

whole purpose and plan of the parties evidently was to prorate the bond issue among the several banks in proportion to the amount of indebtedness which the banks held against the bankrupt corporation.

The practical construction that has been placed upon the contract by the parties is proper to consider in this connection in its interpretation. The record shows that all of the banks performed the conditions of the contract on their parts; except the First National Bank of Perry, and that the appellant B. C. Dilenbeck made written demand on said bank to perform the conditions of the contract on its part. The appellants made no such demand on any of the other banks, and made no contention that the other banks were in any way liable for the default of the First National Bank of Perry. The parties themselves gave a practical construction to the instrument which we think was in accord with the instrument itself.

The contract of guaranty refers to the other contract between the parties, and contains the following recital:

"Whereas, the said funds were secured to pay the amount due to the creditors of the Globe Manufacturing Company under an offer of composition approved by the Federal court, and also for furnishing to the Globe Manufacturing Company, in which the parties hereto are interested, certain additional capital for working purposes,"

Appellants contend that the failure of the one bank to take its quota of bonds and thus furnish the corporation "working capital" resulted in loss to the corporation and its ultimate failure, and that because thereof the guarantors were discharged.

What question of damage there may be between the defaulting bank and the corporation is not involved here. As we construe the contract, the appellants were not relieved of their liability as guarantors to the banks which fully performed their obligations and paid for their share of the bonds, because another bank did not perform its obligation and take and pay for its pro-rata share of the bonds.

There is also some further evidence in regard to a subsequent suit between the First National Bank of Perry and B. C. Dilenbeck that indicated a waiver on his part of the default of said bank and a ratification of the contract, notwithstanding such default. We are disposed to acquiesce in the construction

placed upon the contract by the trial court, and we hold that appellants were not discharged from liability under their contracts of guaranty to the appellee and interveners by reason of the failure of the First National Bank to perform the contract on its part.

As bearing on our conclusion, see *Des Moines Cotton Mill Co. v. York Inv. Co.*, 92 Iowa 396; *McArthur v. Board*, 119 Iowa 562; *Edwards v. Wagner*, 191 Iowa 822; *Tucker v. Leise*, 201 Iowa 48.

II. The appellants contend that the entire transaction was illegal and void, and therefore the contract of guaranty is unenforcible. The contention of the appellants at this point is that the banks were creditors of the said corporation, and by the agreement they were to receive a larger portion of their claims than other creditors of the said corporation, and that such a contract was invalid. It is to be noticed that there are no other creditors of said corporation who are making any complaint with regard to the compromise by which they receive 20 per cent of their claims. Whether the trust agreement involving a mortgage on the property of the bankrupt corporation could be upheld as against other creditors who received their 20 per-cent under the composition settlement is not before us. The facts are that a compromise was effected by which all the creditors of the corporation accepted 20 per cent of their claims under a composition settlement. There is no claim of any deceit or fraud or misrepresentation in regard to the property or the indebtedness of the corporation in effecting such compromise. After said compromise had been effected and approved by the court, the bankrupt executed a new promise to certain creditors to pay their claims in full. Such a promise of payment is valid and enforcible, notwithstanding the prior discharge of the debtor. *Fierce v. Fleming*, 205 Iowa —; *Zavelo v. Reeves*, 227 U. S. 625 (57 L. Ed. 676). The contract in question was not illegal nor fraudulent, and the appellants are not relieved of liability under their contract of guaranty because of the character or the circumstances under which the contract was made, as disclosed by the record.

III. The abstract in this case is prepared with so little regard for the rules of this court that we cannot pass it by with-

out comment. What purports to be an "index" is not arranged in alphabetical order, as the rules require, and is of very little assistance to us; but the most glaring omission therein is the failure to in any way index the exhibits. The case requires the examination of numerous important exhibits which are scattered through the abstract. The rules contemplate that exhibits shall be properly indexed, so that we can readily turn to them as needed. In this case we are left to search through an abstract of 164 pages, page by page, to endeavor to locate the various exhibits that were introduced in the case. Nearly three pages of the abstract are taken up with listing the exhibits which were introduced under stipulation, but there is not a suggestion in the abstract, by index or otherwise, where these exhibits are to be found. We cannot tolerate such inexcusable disregard of the rules, the result of which is to require us to spend our time searching page by page through a large abstract in quest of some exhibit that should come immediately to hand through a proper descriptive index. If this case were reversed, we should at least impose a penalty in the way of taxation of costs. The fact that we have seen fit to consider this case upon a defective abstract of this character, without striking it from the files, is not to be construed by the bar as any precedent that will bind us in the future. The labors of this court are exacting and arduous enough without having foisted upon it the duties which are expressly placed upon counsel in the proper preparation of an abstract, with an index prepared according to the rules. The rule in question is No. 18 of the rules of this court, and the portion referring to the index to abstracts is at the bottom of the first column on page 1,680 of the Code of 1927.

The decree of the trial court is—*Affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.