INDEMNITY INSURANCE COMPANY, Appellee, v. L. L. OPDYCKE et al., Defendants, ALVAH GRIFFITH, Administrator, Defendant, Appellant.

No. 43852.

May 11, 1937.

Sullivan & Scholz, for plaintiff-appellee.

Geiser & Donohue, for substituted defendant, Alvah Griffith, administrator, appellant.

Blankenheim & Opdycke, for defendant, L. L. Opdycke.

MITCHELL, J.—The Indemnity Insurance Company of North America commenced this action at law against L. L. Opdycke and Herman Koehler for the recovery of money which the Insurance Company claimed to have paid on a certain referees' bond executed by Opdycke and Koehler as principals and the Indemnity Insurance Company of North America as surety. It based its right of recovery on an indemnifying agreement contained in the written application. The bond was issued in an action of partition, wherein the said principals were appointed referees to make a sale of real estate, and it is alleged that the said referees received the proceeds from the sale of said real estate and failed to account for the moneys coming into their hands; that the Insurance Company was required to pay the sum prayed for, under its suretyship.

Herman Koehler filed a separate answer, denying under oath that he signed or executed said referees' bond, or even authorized any other person to execute the same for him; denying that he ever had in his possession any funds or property in said partition action, or any funds relating to said partition action, except $50 paid to him by L. L. Opdycke, which amount he returned to the court. He denied that he was indebted in any

amount. Prior to the time of the trial Herman Koehler died and his administrator, Alvah Griffith, was substituted in his place.

L. L. Opdycke filed a general denial.

Jury having been waived, the case was submitted to the court, which returned a verdict in favor of the Insurance Company against both of the defendants for $566.42, plus interest and attorneys' fees. The estate of Herman Koehler has appealed.

We must turn to the record to ascertain the facts.

In December of 1932 a decree of partition in cause No. 8506, entitled "Martha Weston vs. Unknown Claimants of certain real estate," was entered, ordering the sale of the real estate and appointing L. L. Opdycke and Herman Koehler as referees. A few days later Herman Koehler and L. L. Opdycke, as referees, made, signed and executed an application for referees' bond to the Indemnity Insurance Company of North America. The nature of this agreement and the conditions of same will be given consideration later in this opinion. The Indemnity Insurance Company then signed a referees' bond as surety. L. L. Opdycke signed in person. Herman Koehler did not sign, but, instead, the bond was signed "Herman Koehler by R. Feyerbend, his attorney." It was then filed by the referees. Shortly thereafter the referees filed a joint report, which was signed by R. Feyerbend as attorney for them and sworn to by Koehler and Opdycke, stating that they were the duly qualified, appointed and acting referees for the purpose of selling the real estate; that they had sold the real estate to Sam Dawson for $6,000; that they had furnished bond; and they asked that they be authorized to execute referees' deed to the purchaser. Several months later Martha Weston, the plaintiff in cause No. 8506, filed her petition, and Sam Dawson, the purchaser of the land, filed his petition, both asking for refund and payment of the $1,000 by the referees to the said purchaser, setting up certain defects in the partition action and that good title could not be made. Opdycke filed his separate report, wherein he admitted that he received $1,000 down payment as part of the purchase price of said real estate, paid by Sam Dawson; that at the request of R. Feyerbend, the attorney, he made expenditures set forth in his report, showing disposition of part of the $1,000 which he received, and that he had on hand the sum of $391.67. Herman Koehler filed his separate report, in which he set up that he had no knowledge of the expenditures set forth in L. L.

Opdycke's report, and that he did not at any time authorize the said Opdycke to issue any checks. Objections to the report of Koehler were filed, and upon a hearing the court ordered the referees to pay to Sam Dawson the sum of $1,000.

In January of 1934 Martha Weston and Guy Schoonover, as assignees of all of the rights of Sam Dawson, commenced action against Opdycke and the Indemnity Insurance Company of North America for the sum of $1,000, with interest and costs, and judgment was entered in the amount of $365.12 in favor of the plaintiff Schoonover and in the amount of $248.90 in favor of Martha Weston. Both of these judgments were against Opdycke and the Indemnity Insurance Company of North America. It should be noted that Herman Koehler was not made a defendant in this action. Thereafter the Indemnity Insurance Company of North America paid the amount of the two judgments rendered against it, and commenced this action to recover that sum, plus interest, costs and attorneys' fees, against both Opdycke and Koehler.

The writer of this opinion does not agree with the majority of the court and his views will be set out in the dissenting opinion.

The right to recover in this action is based upon the indemnifying agreement signed by both Opdycke and Koehler, upon which agreement the bonding company signed as surety the bond in the partition action. The estate of Herman Koehler is the only party appealing, and so we are not confronted with the question of whether the judgment against Opdycke was properly entered.

The indemnifying agreement contained in the application signed by referees is as follows:

"We do hereby covenant, promise and agree to pay * * * to the company any and all loss, costs, charges, suits, damages, counsel .fees and expenses of whatever kind or nature which said company shall or may for any cause at any time, sustain or incur or be put to for or by reason or in consequence of said company having entered into or executed said bond, and we do further agree that if any suit is brought on the bond herein applied for, to permit said company to employ its own counsel or attorneys to defend such suit and to repay to said company the fee of said counsel and all other costs and expenses to which the company may be put in defense of such suit."

■■■ The question is whether the two parties who signed the application, part of which is quoted above, were jointly and severally liable, or simply severally liable. Whatever liability there is in this case depends upon the construction of this application.

In the case of McArthur v. Board, 119 Iowa 562, at page 564, 93 N. W. 580, the late Justice Weaver, speaking for the court, said:

"Individual cases depend so much upon the peculiar wording of the contracts under consideration and the peculiar circumstances and relations of the parties, that they are of limited value as precedents, and we think it unnecessary to go into any extended review of those which have been cited in argument. They are all in harmony with the proposition we have above stated that the intention of the parties, if it can be gathered from the language employed and the circumstances indicated by the contract as a whole, must be our guide in determining the extent of the liability thereby incurred."

In the recent case of Licht v. Klipp, 213 Iowa 1071, on page 1074, 240 N. W. 722, 724, Justice Kindig said:

"Whether a contract is joint or several must be determined by the terms thereof, viewed in the light of the attending circumstances, and the practical, mutual construction, if any, placed thereon by the parties. Shively v. Globe Mfg. Co., 205 Iowa 1233, 219 N. W. 266."

And so in the case at bar, what was the intention of Herman Koehler and L. L. Opdycke at the time they signed the application? The language is:

"We do hereby covenant, promise and agree to pay * * * all loss, costs, charges, damages, counsel fees and expenses of whatever kind or nature which said company shall or may for any cause at any time sustain or incur * * *."

The essence of this agreement between the referees and the bondsman was that the bondsman said: "Yes, I will sign your bond, but you have to agree to indemnify me against any loss, for any cause, no matter how sustained, by reason of signing of the bond." The evidence is undisputed that the company had to pay a loss. In the application that both referees signed the words "we agree" were used. Not singly, but together they

agreed to indemnify the company against any loss which it might sustain. In view of this agreement Herman Koehler was liable for the loss suffered by the bonding company.

█▌█ The appellant denies that Koehler ever signed the bond. That the bonding company did sign the bond is conceded. It appears from the record that it was signed "Herman Koehler by R. Feyerbend, his attorney." It is not necessary to go into the question of whether Feyerbend, the attorney, had authority to sign the bond, because shortly after the filing of the bond the referees filed a report of sale, in which they set forth that they were the duly qualified, appointed and acting referees and that they had furnished surety bond for $8,400, the amount required by the court order. This report of sale was signed by R. Feyerbend, attorney for the referees, but was verified by Herman Koehler and L. L. Opdycke. In view of the fact that Koehler swore to the report of sale, setting forth that he had filed a bond, his administrator is now in no position to deny that Feyerbend, the attorney, did not have authority to sign Koehler's name to the bond.

There are some other questions raised in regard to the admission of evidence, all of which have been given careful consideration. We do not find there was any error prejudicial to the appellant in the admission of the testimony. It follows, therefore, that the lower court was right in entering judgment against the estate of Herman Koehler, and judgment and decree must be, and it is hereby, affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, DONEGAN, KINTZINGER, PARSONS, SAGER, and STIGER, JJ., concur.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority, and respectfully dissent.

The question is whether the two parties who signed the application were jointly and severally liable, or simply severally liable. Whatever liability there is in this case depends upon the construction of this application. Here we have a record which shows that L. L. Opdycke received the purchase price which was paid to the referees, and the money which he expended was expended without the authority and knowledge of Koehler. The only amount that Koehler received out of this payment was the

sum of $50, and this amount was repaid. So we have a record in which we have two referees, one of whom did not receive any of the money, and the other expended without authority certain sums. The question is, are both referees liable? Or, is the referee who expended the money individually liable?

In the case of McArthur v. Board, 119 Iowa 562, at page 564, 93 N. W. 580, the late Justice Weaver, speaking for the court, said:

"Individual cases depend so much upon the peculiar wording of the contracts under consideration and the peculiar circumstances and relations of the parties, that they are of limited value as precedents, and we think it unnecessary to go into any extended review of those which have been cited in argument. They are all in harmony with the proposition we have above stated that the intention of the parties, if it can be gathered from the language employed and the circumstances indicated by the contract as a whole, must be our guide in determining the extent of the liability thereby incurred."

In the recent case of Licht v. Klipp, 213 Iowa 1071, on page 1074, 240 N. W. 722, 724, Justice Kindig said:

"Whether a contract is joint or several must be determined by the terms thereof, viewed in the light of the attending circumstances, and the practical, mutual construction, if any, placed thereon by the parties. Shively v. Globe Mfg. Co., 205 Iowa 1233, 219 N. W. 266."

And so in the case at bar, was it the intention of the parties to bind both parties? Did Koehler agree to act as surety for Opdycke, and did Opdycke agree to act as surety for Koehler? No person can be bound for the acts or omissions of another unless he can be said to have so contracted. Koehler had nothing to do with the appointment of Opdycke, and Opdycke had nothing to do with the appointment of Koehler. They were appointed by an order of the court, and they were acting as officers of the court. What did Koehler agree to do? To make good any shortage that was due to the failure of Opdycke to account for money that came into his hands? No, what Koehler agreed to do was to account for any moneys that came into his hands. They were co-referees. This is shown by the fact that they filed separate reports. When action was brought to recover the money

Herman Koehler was not joined as a party; only Opdycke and the Indemnity Insurance Company of North America were joined.

The question of whether referees appointed in a partition action are jointly liable appears never before to have been decided by this court, and the distinguished and able counsel representing both parties in this action have been unable to cite us authorities from other courts.

What Koehler agreed to do when he signed the application, was to account for all of the funds that came into his hands as referee. He did not in that application say, nor did the Indemnity Insurance Company require him to say, ''I will not only be responsible for all of the money for which I fail to account but I will also stand responsible for the sums of money for which my co-referee fails to account.'' If it had been the desire of the Indemnity Insurance Company to require that, they could very easily have placed it in the application, and before the issuing of the bond could have required Koehler to have agreed to it. Had he agreed, he would have been bound. But, before he can be held accountable for the failure of Opdycke to account for funds of which Koehler had no knowledge and which never came into his hands, and which he did not in any way default upon, there must be a clear showing that Koehler agreed to pay these sums to the Indemnity Insurance Company in case his co-referee defaulted.

Upon this record, certainly, it cannot be held that Koehler ever intended to guarantee the conduct and fidelity of Opdycke.

In my judgment the Koehler Estate would be liable for only such amounts of money that Koehler misappropriated or failed to account for, and the lower court erred in entering judgment against the estate for the amount for which Opdycke failed to account. I would reverse the case.